[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 413.]

THE STATE EX REL. CONRAD, APPELLEE, *v*. INDUSTRIAL COMMISSION OF OHIO; KROGER COMPANY, APPELLANT.

[Cite as *State ex rel. Conrad v. Indus. Comm.*, 2000-Ohio-365.]

*Workers' compensation—Industrial Commission's denial of payment for claimant's surgery an abuse of discretion—Gay relief ordered.*

(No. 98-1387—Submitted February 22, 2000—Decided May 17, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 97APD04-571.

_____

{¶ 1} Appellee-claimant, Bridget Conrad, sustained an industrial injury in 1975, while employed by appellant, Kroger Company. Her workers' compensation claim was allowed for "back injury, pre-pyloric ulcer; trochanteric bursitis of right hip." She had three surgeries related to her low back condition prior to 1994.

{¶ 2} In October 1994, claimant was examined by Dr. James H. Rutherford. He reported numerous disc abnormalities and other lumbar instability. He also noted that claimant had been forced to adapt her lifestyle to accommodate her pain:

"On reviewing the records it is my opinion that her treatment has not been excessive. Her three surgeries have been appropriate for her clinical findings and they at least were initially of therapeutic value.

"It is my medical opinion at this time, however, that she has reached maximum medical improvement. On reviewing her records[,] it is my medical opinion that she would not benefit from any further surgical procedure at this time. It is my medical opinion that her functional capacities will not be improved by any further surgical procedure. The patient has also not been able to lose any weight over the last two years and this is a contra-indication of doing a surgical procedure at this time. She has also adjusted reasonably well to her symptoms and

impairments and she has indicated, at least to Dr. Miely, that she did not choose to have any further surgical procedures done at this time.

"At the present time it is my medical opinion that Ms. Conrad needs only maintenance treatment. * * *"

{¶ 3} One month later, claimant had an acute exacerbation of her low back condition. She contacted Dr. Ralph G. Rohner on November 18, complaining of "severe pain [and] stating that she could hardly walk." By the time of her examination three days later, her condition had worsened. Dr. Rohner noted that claimant "cannot sit for exam[.] She cannot stand up erect, lists to the side, stands flexed at hips. SI tender, SN severely tender. Lumbar Pathology[:] acute intractible [*sic*] pain."

{¶ 4} Dr. Rohner sought emergency hospitalization with intravenous morphine drip and physical therapy. Unable to obtain prior authorization from claimant's self-insured employer, appellant, Kroger Company ("Kroger"), claimant was hospitalized anyway, and an MRI was performed. Among other problems, the test showed epidural fibrosis secondary to claimant's earlier surgeries.

{¶ 5} Claimant asked the Industrial Commission of Ohio to order Kroger to pay for the November 1994 hospitalization. A district hearing officer granted that request, and no appeal followed. In mid-October 1995, Dr. Rohner sought emergency authorization for further surgery. In an accompanying letter, he wrote:

"Bridget Conrad sustained an industrial injury to her low back, which was recognized. She subsequently underwent a decompression, laminectomy and diskectomy [*sic*] at the L4-5 level only to experience a recurrence. As a result of the recurrence, she underwent an extensive decompression of the L4-5, L5-S1 levels * * *. With her last surgery, she underwent an associated transverse process fusion. Relief was obtained for a while, only to experience a recurrence. Subsequent testing had shown development of a pseudarthrosis in her fusion, a retrolisthesis at the L4-5 level and a recurrent entrapment of the L4-5 nerve root in

2

scar tissue. This is the level of previous pathology recognized by the Bureau of Workers' Compensation. It is a recurrence.

" * * * The purpose of this hospitalization is to undergo repeat excision of the scar tissue plus a stabilization with metallic fixation of the levels of involvement. The fusion will follow. * * *"

{¶ 6} Kroger denied approval, and an emergency hearing was requested in September 1995. On October 27, 1995, claimant had the surgery. Four days later, a district hearing officer ("DHO") heard claimant's motion and denied payment for the surgery, writing:

"[T]his is a twenty (20) year old claim with three (3) back surgeries. Dr. Rutherford opined that Claimant would not benefit from any further surgical procedure for this claim."

{¶ 7} A staff hearing officer affirmed the DHO's order. Claimant sought reconsideration, submitting a letter from Dr. William Zerick, who wrote:

"[T]his letter is regarding the necessity of surgery performed on Bridget Conrad. This lady has undergone a decompressive laminectomy and discectomy as well as an attempted non-instrumented fusion in the past. She failed to fuse, and has developed a pseudarthrosis, which is really a failure to fuse. She has severe mechanic low back pain as well as severe radicular pain and weakness secondary to foraminal stenosis secondary to what was thought to be a herniated disk; however, [it] turned out to be bone.

" * * * [S]he did have intractable mechanical low back pain, as well as a corresponding pseudoarthrosis[, and] it was[,] in my opinion, absolutely necessary and indicated that she undergo decompression of the L4 nerve root and instrumentation and arthrodesis. In fact, I think the proof is in the 'pudding', and postoperatively she has noticed a great relief of her back pain as well as her leg pain."

{¶ 8} Reconsideration by the commission was denied.

{¶ 9} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in denying surgical payment. The court of appeals agreed in part, finding that Dr. Rutherford's report was not "some evidence" supporting the denial of surgical payment. The court of appeals then issued a limited writ that vacated the commission's order and returned the cause to the commission for further consideration.

{¶ 10} This cause is now before this court upon an appeal as of right.

_____

*Huntley & Huntley* and *Jeffrey L. Huntley*, for appellee.

*Porter, Wright, Morris & Arthur* and *Karl J. Sutter*, for appellant.

_____

***Per Curiam.***

{¶ 11} Two issues are raised: (1) is Rutherford's report "some evidence" supporting denial of surgical payment? and (2) if not, is a return for further consideration warranted? For the reasons to follow, we answer both questions in the negative.

{¶ 12} Dr. Rutherford examined claimant in October 1994. Claimant's condition, at that time, was unchanged from 1992. Although still having back pain, she could do light housework and had modified her lifestyle to accommodate her limitations. Based on claimant's history, then current symptoms and other medical information, Dr. Rutherford assessed maximum medical improvement and opined that further surgery was unwarranted.

{¶ 13} A month later, claimant's condition changed dramatically. Dr. Rohner recorded an initial November 18 contact where claimant reported "severe pain [and] stating that she could hardly walk." Within three days, her condition had worsened. Objectively, Dr. Rohner found an inability by claimant to sit or stand erect without severe pain. An MRI corroborated claimant's complaints. Dr. Rohner advised emergency hospitalization.

**{¶ 14}** Dr. Rutherford's report preceded these new and changed circumstances embodied by the exacerbation of claimant's condition. *State ex rel. Bing v. Indus. Comm.* (1991), 61 Ohio St.3d 424, 575 N.E.2d 177, recognized that claimants who had previously been declared as MMI could experience temporary exacerbation of their condition that justified further treatment or even temporary total disability compensation, as the claimant struggled to recover his or her previous level of well-being.

**{¶ 15}** To endorse the continued probative value of Dr. Rutherford's report, in view of the events occurring after his examination of claimant, gives his report a *res judicata* effect. This result was rejected in *State ex rel. B.O.C. Group, GMC v. Indus. Comm.* (1991), 58 Ohio St.3d 199, 201, 569 N.E.2d 496, 498, quoting 3 Larson, Workers' Compensation Law (1989) 15-426, 272(99), to 15-426, 272(100), Section 79.72(f):

" 'It is almost too obvious for comment that res judicata does not apply if the issue is claimant's physical condition or degree of disability at two entirely different times. * * * A moment's reflection would reveal that otherwise there would be no such thing as reopening for change in condition. The same would be true of any situation in which the facts are altered by a change in the time frame * * *.' "

**{¶ 16}** Given these principles and the facts presented, Dr. Rutherford's report was not probative of the need for surgery following the 1994 exacerbation of claimant's condition. The commission, therefore, abused its discretion in relying on that report to deny payment for the procedure.

**{¶ 17}** Having eliminated Rutherford's report from consideration, the court of appeals returned the cause to the commission for further consideration, reasoning that "a lack of evidence supporting a denial of * * * benefits cannot automatically translate into some evidence supporting an award of such benefits." See *State ex rel. Lampkins v. Dayton Malleable, Inc.* (1989), 45 Ohio St.3d 14, 16-17, 542

N.E.2d 1105, 1108. *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666, however, has since recognized that where the evidence is so one-sided as to support but one result, a return to the commission can be dispensed with and a judgment consistent with the evidence rendered.

{¶ 18} In this case, the claim has been broadly allowed for "back injury," and Kroger has paid for prior disc surgeries in the affected areas. These prior surgeries, in turn, caused claimant's need for the disputed surgeries, according to Drs. Zerick and Rohner, whose reports comprise the only other evidence of record. The evidence, therefore, is clear enough to warrant *Gay* relief.

{¶ 19} We affirm that portion of the court of appeals' judgment that disqualified Dr. Rutherford's report. The remainder of the judgment is reversed, and a writ of mandamus consistent with *Gay* is hereby granted.

*Judgment reversed in part*
*and affirmed in part.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————