DECISION
{¶ 1} Relator, Airborne Freight Corporation, filed this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), *Page 2 
to vacate its order awarding to respondent, David A. Paskalik ("claimant"), temporary total disability ("TTD") compensation beginning February 17, 2004, and to enter an order denying that compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this court referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, denying the requested writ. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision, as follows:
 [1.] The Magistrate erred when he concluded the Industrial Commission's MMI finding did not include the condition of "Degenerative Disc Disease L4-S1."
 [2.] The Magistrate erred when he ruled that the Commission did not abuse its discretion under State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 [3.] The Magistrate erred when he concluded that Dr. Hernandez's C-84s provide some evidence supporting the TTD award.
 {¶ 3} No party has objected to the magistrate's findings of fact, and we adopt them as our own. In brief, claimant sustained a work-related injury on April 20, 1998. Relator certified the claim for that injury using the code "722.93 lumbar disc." By letter dated December 23, 2002, relator recognized an additional claim for "Degenerative Disc Disease L4-S1." The commission allowed the additional claim for "L4-5 DISC PROTRUSION and RIGHT L4-5 FORAMINAL STENOSIS[.]"
 {¶ 4} Based on reports by Dr. Elizabeth Mease, and following a hearing on January 20, 2004, a district hearing officer ("DHO") terminated TTD compensation. The DHO's order listed "LUMBAR DISC" as the allowed condition and found "that claimant's allowed conditions herein have reached a level of maximum medical improvement" *Page 3 
("MMI"). A staff hearing officer ("SHO"), listing "LUMBAR DISC" as the allowed condition, affirmed the order.
 {¶ 5} Claimant also moved for TTD compensation based on the medical reports of Dr. Juan M. Hernandez. Following a July 26, 2005 hearing, a DHO issued an order granting TTD compensation beginning February 17, 2004. Following a September 9, 2005 hearing, an SHO vacated the DHO order and issued an order that also granted TTD compensation beginning February 17, 2004. The SHO expressly found "that the disability is caused by the allowed conditions in this claim." The SHO also found "that injured worker has new and changed circumstances to justify the payment of [TTD] compensation. This portion of the order is based on the C-84s of Dr. Hernandez[.]"
 {¶ 6} By its first objection, relator argues that the magistrate erred in concluding that the commission's finding of MMI did not include degenerative disc disease. However, we agree with the magistrate's consideration and resolution of this issue. As the magistrate stated, this issue is largely a factual one, and the commission did not abuse its discretion in finding that the MMI finding was limited to claimant's claim for "lumbar disc." Therefore, we overrule relator's first objection.
 {¶ 7} By its second objection, relator argues that the SHO's order granting TTD compensation violates State ex rel. Noll v. Indus.Comm. (1991), 57 Ohio St.3d 203, that is, the commission did not adequately explain the basis for its decision. Before the magistrate, relator argued that the SHO's "most obvious error is that she failed to state what in the C-84 forms constituted a new or changed circumstance." Instead, relator argued, the SHO's order made a general finding of changed circumstances with reference only to the C-84s. However, the commission and claimant argued that the *Page 4 
SHO's finding of new and changed circumstances was not an abuse of discretion, and the SHO's order did not violate Noll. They relied on Dr. Hernandez's reference to claimant's "disabling back condition at present" and to "low back pain extends J, [right] leg." In any event, respondents argued, the SHO's order included the additional conditions of L4-5 disc protrusion and right L4-5 foraminal stenosis, which constitute independent grounds for TTD.
 {¶ 8} In his decision, the magistrate acknowledged that the SHO "never actually explains what the new and changed circumstances might be." (Magistrate's Decision at ¶ 54.) The magistrate concluded, however, that claimant had no responsibility to prove, and the commission had no obligation to find, new and changed circumstances because claimant did not seek to revive the "lumbar disc" claim allowance as a basis for reinstatement of TTD compensation. Therefore, the magistrate found there was no error.
 {¶ 9} Relator argues that the magistrate's resolution of this point simply compounds the Noll violation. "By effectively vacating the SHO's order, the Magistrate substituted his factual conclusions on the issue of new and changed circumstances and the existence of the disabling conditions." In response, claimant and the commission argue that the SHO's order does not violate Noll, but they do not address the magistrate's conclusion that a finding of new and changed circumstances was unnecessary and, therefore, irrelevant.
 {¶ 10} Under certain circumstances, the commission has continuing jurisdiction to reconsider a previous decision. Under R.C. 4123.52, the commission can invoke that jurisdiction where one of five pre-conditions exists, including the presence of new and *Page 5 
changed circumstances. "The presence of one of these prerequisites must be clearly articulated in any commission order seeking to exercise reconsideration jurisdiction. [State ex rel. Nicholls v. Indus.Comm. (1998), 81 Ohio St.3d 454]; State ex rel. Foster v. Indus.Comm. (1999), 85 Ohio St.3d 320 * * * This means that the prerequisite must be both identified and explained." State ex rel. Gobich v. Indus.Comm., 103 Ohio St.3d 585, 2004-Ohio-5990, at ¶ 15.
 {¶ 11} The Ohio Supreme Court has held that the temporary worsening or exacerbation of a claimant's condition can constitute new and changed circumstances, thus entitling a claimant to TTD compensation. SeeState ex rel. Bing v. Indus. Comm. (1991), 61 Ohio St.3d 424; State exrel. Conrad v. Indus. Comm. (2000), 88 Ohio St.3d 413. Where new and changed circumstances support the commission's reinstatement of TTD, the commission has "a duty to state that there were new and changed circumstances and to identify them." State ex rel. Wheeler v. Indus.Comm., Franklin App. No. 02AP-865, 2003-Ohio-3120, at ¶ 49.
 {¶ 12} "However, when TTD has been terminated because the conditions for which it was being paid have reached MMI, the claimant may have another allowed condition, a different one, that has not yet reached MMI and is causing an inability to return to work, and TTD may be paid on the basis of the other allowed condition." Id. at ¶ 42, citing State exrel. Basye v. Indus. Comm. (1992), 64 Ohio St.3d 68. Here, having concluded that the commission's finding of MMI applied only to claimant's lumbar disc disease, we agree with the magistrate that claimant was not required to prove, and the SHO was not required to find, that claimant's lumbar disc condition had changed or temporarily worsened in order for the SHO to award TTD. In other words, claimant *Page 6 
could have sought, and the commission could have considered, TTD compensation based solely on the new conditions. Nevertheless, the SHO did make a finding of new and changed circumstances, and we consider whether that finding satisfied Noll.
 {¶ 13} The SHO stated: "This portion of the order is based on the C-84s of Dr. Hernandez dated 11/23/2004, 01/13/2005, 03/08/2005, 04/28/2005, and 06/21/2005." Each of these C-84s identifies "disabling back condition at present" as the explanation for claimant's inability to return to work. Each C-84 also identifies the following as "ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work[:] 722.93 degenerative disc disease — L4-S1[;] 722.16 L4-5 disc protrusion[;] 724.08[R] foraminal stenosis L4-5[.]" Each form also includes "J, L-S ROM" as the objective clinical finding and "low back pain extends J, [R] leg" as the subjective finding. Nothing in the C-84s expressly identifies or explains a change in circumstances relating to claimant's initial allowed condition, lumbar disc disease.
 {¶ 14} We agree with the commission and claimant that Noll requires only that the commission state what evidence it relied upon and give a brief explanation for its decision. We find, however, that the SHO's order did not meet this minimum standard with respect to the finding of new and changed circumstances. While the SHO clearly identified the evidence relied upon, the SHO gave no explanation for the decision that new and changed circumstances existed. The order did not identify the new or changed circumstances, nor did the order connect those new or changed circumstances to the evidence. Therefore, we find that the SHO's order violated Noll, and we sustain relator's second objection, in part. *Page 7 
 {¶ 15} However, we do not agree with relator's assertion that the SHO violated Noll by failing to identify the disabling conditions. The SHO's order identifies all of the allowed conditions: "LUMBAR DISC; DEGENERATIVE DISC DISEASE L4-S1; RIGHT L4-5 FORAMINAL STENOSIS." Dr. Hernandez's C-84s identify degenerative disc disease L4-S1, L4-5 disc protrusion, and right foraminal stenosis L4-5. Thus, we conclude that the SHO's order identified the disabling conditions adequately, and we overrule that portion of relator's second objection.
 {¶ 16} In its third objection, relator argues that the magistrate erred in finding that the C-84s of Dr. Hernandez are some evidence supporting TTD compensation because the C-84s are inconsistent with his office notes. However, we agree with the magistrate's consideration and resolution of this issue. As the magistrate found, the commission had discretion to determine the weight to be given to Dr. Hernandez's office notes, notwithstanding the lack of reference to all of the allowed conditions. Therefore, we overrule relator's third objection.
 {¶ 17} Having determined that the SHO's finding of new and changed circumstances was in error, we consider whether a writ should issue. We will issue a writ of mandamus only if relator has a clear legal right to the relief requested and the commission has a clear legal duty to provide that relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141, paragraph one of the syllabus.
 {¶ 18} In addition to finding that new and changed circumstances existed, the SHO also concluded "that the disability is caused by the allowed conditions in this claim." As the magistrate recognized, Dr. Hernandez's C-84s expressly identify at least two of the allowed conditions, degenerative disc disease L4-S1 and right L4-5 foraminal *Page 8 
stenosis. The C-84s also identified Dr. Hernandez's clinical findings, both objective and subjective. Thus, Dr. Hernandez's C-84s are some evidence upon which the SHO could conclude that these conditions caused the allowed conditions and award TTD compensation on that independent basis. Therefore, relator is not entitled to a writ ordering the commission to deny TTD compensation or to reconsider claimant's application.
 {¶ 19} Accordingly, based on an independent review of this matter, we overrule relator's first and third objections, and we sustain in part and overrule in part relator's second objection. We adopt the magistrate's findings of fact as our own, and we adopt those portions of the magistrate's conclusions of law that are consistent with this decision. The requested writ is denied.
Objections 1 and 3 overruled, Objection 2 sustained in part andoverruled in part, writ of mandamus denied.
 SADLER, P.J., and BROWN, J., concur. *Page 9 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 20} In this original action, relator, Airborne Freight Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding to respondent David A. Paskalik ("claimant') temporary total *Page 10 
disability ("TTD") compensation beginning February 17, 2004, and to enter an order denying said compensation. Findings of Fact:
 {¶ 21} 1. On April 20, 1998, claimant sustained an industrial injury while employed as a "driver — dock worker" for relator, a self-insured employer under Ohio's workers' compensation laws. Initially, relator certified the industrial claim for "722.93 lumbar disc." The industrial injury occurred when claimant was unloading a heavy cardboard box from a conveyor belt.
 {¶ 22} 2. By letter dated December 23, 2002, relator additionally recognized the claim for "Degenerative Disc Disease L4-S1." The letter did not use an ICD-9 code number to describe the additionally recognized condition.
 {¶ 23} 3. On April 15, 2003, at relator's request, claimant was examined by Elizabeth Mease, M.D. On the first page of her four-page report, Dr. Mease lists "722.93 — unspecified disc disorder of lumbar region," as the allowed condition. Dr. Mease also lists April 20, 1998 as the date of injury and the claim number as 98-410044. On the first page of her report, Dr. Mease indicates that claimant sustained another injury on June 13, 2002, and that a lumbar MRI on August 23, 2002 had revealed "L4-5 degenerative disc disease with more focal disc protrusion in the right foraminal region associated with annular tear and possible impingement on L4 nerve root." In her April 15, 2003 report, Dr. Mease concludes:
 Extent of Disability
 There are no objective clinical findings. Medical documentation does support the existence of degenerative lumbar disc disease and an L4-5 disc protrusion/annular tear. Radicular-like symptoms are in a non-physiologic distribution and [do] not correlate with any dermatomal pattern. *Page 11 
 Does this claimant require permanent restrictions or can he return to work at full duty?
 It is more likely than not that he can return to the full duties of his job. However, given the discrepancy between subjective and objective findings, I do advise performance of a functional capacity examination to assist in the determination of work ability. * * *
(Emphasis sic.)
 {¶ 24} 4. On August 28, 2003, again at relator's request, claimant was examined by Dr. Mease. On the first page of her five-page report, dated August 29, 2003, Dr. Mease lists the allowed condition as "722.93 — lumbar region" and the date of injury as April 20, 1998. She again lists the claim number as 98-410044.
 {¶ 25} Under the "Medical History" portion of her report, Dr. Mease again refers to an injury that occurred on June 13, 2002, as claimant was bending over to retrieve something from his personal locker. Dr. Mease again describes the results of the August 23, 2002 MRI. On pages four and five of her report, Dr. Mease concludes:
 Is this Claimant capable of return to work full duty now? If No, please document when anticipated.
 A formal job description is not available. However, I presume from a prior discussion of the job duties as presented by Mr. Paskalik that he can resume the full duties of his job without restrictions.
 Is this Claimant capable of return to work at restricted duty now? If yes, please document expected restrictions and timeframe for such restrictions. If no, please document when anticipated.
 If the position requires heavy physical demand activities, then it is my opinion that he may not be able to return to the full duties of his position on a permanent basis. He is capable of performing medium physical demand activities in which he lifts/pushes/pulls up to 50 lbs occasionally and up to 20 lbs frequently. *Page 12 
(Emphasis sic.)
 {¶ 26} 5. On September 21, 2003, at the request of relator, Dr. Mease issued an addendum to her August 29, 2003 report. On the first page of her two-page addendum report, Dr. Mease lists the allowed condition as "722.93 disc disease nec/Nos-lumbar." Dr. Mease also lists the date of injury as April 20, 1998, and the claim number as 98-410044. On page two of her addendum report, Dr. Mease concludes:
 Impression:
 Mr. David Paskalik is a 46 year old employee of Airborne Express [sic] who has an allowed condition of lumbar disc disorder. This condition was originally allowed in 1998. Symptoms recurred on 6/13/2002 when he bent over. Despite physical therapy and analgesics and prolonged off-work time, radicular-like symptoms in a non-dermatomal distribution persist. There is insufficient objective evidence of either lumbar radiculitis or radiculopathy to justify epidural steroid injections. EMG/NCV studies of the lower extremities would provide the necessary objective information. If he declines EMG/NCV studies, then, with a reasonable degree of medical certainty, it is my opinion that he has achieved maximum medical improvement.
 {¶ 27} 6. Earlier, on April 28, 2003, citing Dr. Mease's April 15, 2003 report, relator moved to terminate TTD compensation in claim number 98-410044.
 {¶ 28} 7. On April 30, 2003, the Ohio Bureau of Workers' Compensation ("bureau") referred relator's motion to the commission for adjudication. In the bureau's April 30, 2003 notice of referral, the claim allowance is described as "722.93 DISC DIS NEC/NOS-LUMBAR." *Page 13 
 {¶ 29} 8. Following a January 20, 2004 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation effective the date of hearing, i.e., January 20, 2004. The DHO's order lists "lumbar disc" as the allowed condition of the claim. The DHO's order further states:
 This District Hearing Officer finds that claimant's allowed conditions herein have reached a level of maximum medical improvement based on Dr. Meases' [sic] reports dated 04/15/03, 08/29/03 and 09/21/03.
 {¶ 30} 9. Claimant administratively appealed the DHO's order of January 20, 2004.
 {¶ 31} 10. Following a June 8, 2004 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order of January 20, 2004. The SHO's order also lists the allowed condition as "Lumbar Disc." The SHO's order explains:
 Employer's motion, filed 4-28-03, is granted to the extent that the Staff Hearing Officer finds that claimant has reached a level of maximum medical improvement. The Staff Hearing Officer finds that temporary total compensation has been properly terminated effective the 1-20-04 date of the District Hearing Officer hearing.
 All relevant evidence has been reviewed and considered. The Staff Hearing Officer has relied upon the 4-15-03, 8-29-03 and 9-21-03 reports of Dr. Mease in making this decision.
 {¶ 32} 11. Earlier, on February 17, 2004, claimant was initially examined by Juan M. Hernandez, M.D., and came under his care. Dr. Hernandez authored an extensive office note regarding claimant's February 17, 2004 office visit.
 {¶ 33} 12. The record before this court shows that claimant subsequently visited Dr. Hernandez at his office on March 9, June 3, June 24, July 15, August 12, September 9, October 7, October 21, November 16, November 23, November 30, *Page 14 
December 1, December 9, and December 16, 2004. Dr. Hernandez authored detailed office notes for each office visit and these office notes are contained in the record before this court.
 {¶ 34} 13. In March and May 2004, claimant moved for additional claim allowances. Ultimately, following a November 3, 2004 hearing, a commission deputy issued an order declaring:
 This claim was originally certified on the FROI-1 by the self-insured employer for LUMBAR DISC and was subsequently recognized for DEGENERATIVE DISC DISEASE L4-S1 by their representative through a letter dated 12/23/2002.
 This claim is additionally allowed for L4-5 DISC PROTRUSION and RIGHT L4-5 FORAMINAL STENOSIS
(Emphasis sic.)
 {¶ 35} 14. On November 23, 2004, Dr. Hernandez certified TTD on form C-84 from February 17, 2004 to an estimated return-to-work date of January 17, 2005. The C-84 form asks the attending physician to: "List ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work."
 In response to the query, Dr. Hernandez wrote:
 722.93 Degenerative Disc Disease L4-S1
 722.16 L4-5 Disc Protrusion
 724.08 ® Foraminal Stenosis L4-5
 {¶ 36} 15. On December 10, 2004, claimant moved for TTD compensation based upon the C-84 dated November 23, 2004 from Dr. Hernandez.
 {¶ 37} 16. Following a July 26, 2005 hearing, a DHO issued an order granting TTD compensation beginning February 17, 2004. The DHO's order explains: *Page 15 
 Upon review and consideration of all evidence in the claim file and statements at hearing the claimant shall be paid temporary total disability compensation from 02/17/04 through 07/26/05 and to continue upon submission of evidence the same. * * *
 This claim was additionally allowed in 2004 for relatively significant conditions to the low back. The claimant has not yet fully treated those additionally allowed conditions. Therefore, it is reasonable to conclude that with treatment the conditions can improve. Further, the evidence is clear that the claimant cannot return to his former position of employment. Therefore, it is reasonable to conclude that the claimant is entitled to temporary total disability compensation[.] * * *
 {¶ 38} 17. Relator administratively appealed the DHO's order of July 26, 2005.
 {¶ 39} 18. On August 12, 2005, claimant was examined, at relator's request, by Manhal A. Ghanma, M.D. Dr. Ghanma's report states in part:
 Question #2: Do you feel there are new and/or changed circumstances to support this request? If so, please describe in detail.
 Answer: In my opinion, there are no new or changed circumstances to support the request for temporary total disability at this time. Mr. Paskalik stated that he has not worked since August 31, 2002. There has been no documentation, to the best of my knowledge, to indicate that there has been any change in his condition over the past three years. As noted in the cover letter, he was deemed to be at maximum medical improvement on January 20, 2004, based on his physical conditions. I am unaware of any new change in his physical condition that would require a new period of temporary total disability or continued treatment.
 Although he does have subjective complaints, they cannot be explained based on the injury of this claim or on the allowed conditions at this time considering normal healing times for similar injuries.
(Emphasis omitted.) *Page 16 
 {¶ 40} 19. Following a September 9, 2005 hearing, an SHO issued an order stating that the DHO's order of July 26, 2005 is vacated. Nevertheless, the SHO granted TTD compensation beginning February 17, 2004. The SHO's order explains:
 Staff Hearing Officer grants injured worker's request to award temporary total disability compensation from 02/17/2004 through 07/26/2005 and to continue upon submission of medical proof. Staff Hearing Officer finds that the disability is caused by the allowed conditions in this claim. Staff Hearing Officer further finds that injured worker has new and changed circumstances to justify the payment of temporary total disability compensation. This portion of the order is based on the C-84s of Dr. Hernandez dated 11/23/2004, 01/13/2005, 03/08/2005, 04/28/2005, and 06/21/2005.
 {¶ 41} 20. On October 7, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of September 9, 2005.
 {¶ 42} 21. On February 7, 2006, relator, Airborne Freight Corporation, filed this mandamus action.
Conclusions of Law:
 {¶ 43} Four issues are presented: (1) whether the commission's maximum medical improvement ("MMI") finding includes the condition "Degenerative Disc Disease L4-S1" that relator additionally certified by letter dated December 23, 2002; (2) whether claimant must show new and changed circumstances relating to the allowed or newly allowed conditions that claimant relied upon to support reinstatement of TTD compensation; (3) whether the C-84s of Dr. Hernandez provide some evidence supporting the award of TTD compensation; and (4) whether the commission abused its discretion in failing to address an alleged finding contained in the August 12, 2005 report of Dr. Ghanma that claimant had reached MMI as of January 20, 2004. *Page 17 
 {¶ 44} The magistrate finds: (1) the commission's MMI finding did not include "Degenerative Disc Disease L4-S1"; (2) claimant need not show new and changed circumstances relating to the allowed or newly allowed conditions he has relied upon to support reinstatement of TTD compensation; (3) Dr. Hernandez's C-84s provide some evidence supporting the TTD award; and (4) the commission did not abuse it discretion in failing to address an alleged finding in Dr. Ghanma's August 12, 2005 report that claimant had reached MMI as of January 20, 2004.
 {¶ 45} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 46} The first issue is largely a factual one that turns on a common sense reading of the commission's orders and the medical evidence relied upon to support the MMI determination.
 {¶ 47} Significantly, there is no indication in the DHO's order of January 20, 2004, or the SHO's order of June 8, 2004, that either hearing officer was aware that relator had additionally certified the claim for "Degenerative Disc Disease L4-S1" on December 23, 2002. Both orders simply list the claim allowance as "lumbar disc." Moreover, nothing in relator's April 28, 2004 motion informed the commission's hearing officers that relator was seeking a finding of MMI that includes the December 23, 2002 certification.
 {¶ 48} Unfortunately, the body of the SHO's order of June 8, 2004 fails to specify what was determined to be at MMI, although the listing of the claim allowance "lumbar disc" certainly implies that the "lumbar disc" condition was the only condition determined to be at MMI. *Page 18 
 {¶ 49} A thorough reading of the three relied upon reports from Dr. Mease does not alter the conclusion that only "lumbar disc" was determined to be at MMI.
 {¶ 50} It is Dr. Mease's September 21, 2003 addendum report that contains the actual MMI opinion. In that report, the allowed condition is listed as "722.93 — disc disease nec/Nos-lumbar." While Dr. Mease does acknowledge that the lumbar MRI of August 23, 2002 revealed "L4-5 Degenerative Disc Disease" nowhere in her report is "L4-5 Degenerative Disc Disease" listed or recognized as an allowed condition of the claim.
 {¶ 51} Based upon the above analysis, the magistrate finds that the SHO's order of June 8, 2004, that terminated TTD compensation on MMI grounds cannot be used by relator in this action to support its factual claim that the allowed condition "Degenerative Disc Disease L4-S1" has been determined by the commission to have reached MMI.
 {¶ 52} Turning to the second issue, following the commission's finding that the original claim allowance was at MMI, the commission additionally allowed the claim for "L4-5 disc protrusion" and for "right L4-5 foraminal stenosis." Also, through the deputy's order, the commission belatedly recognized that the December 23, 2002 letter had additionally allowed the claim for "Degenerative Disc Disease L4-S1."
 {¶ 53} On November 23, 2004, Dr. Hernandez certified a period of TTD based upon the three allowed conditions that have not been determined to be at MMI.
 {¶ 54} In the SHO's order of September 9, 2005, awarding TTD compensation beginning February 17, 2004, the SHO "finds that injured worker has new and changed circumstances to justify the payment of temporary total disability compensation." *Page 19 
However, the SHO never actually explains what the new and changed circumstances might be.
 {¶ 55} Seizing on the SHO's unexplained finding that new and changed circumstances exist to justify reinstatement of TTD compensation based upon Dr. Hernandez's C-84, relator claims that the commission abused its discretion because the relied upon C-84s do not present evidence of new and changed circumstances, nor does the SHO explain what constitutes the new and changed circumstances.
 {¶ 56} Relator's suggestion that the claimant must show new and changed circumstances is not supported by the case law cited by relator.
 {¶ 57} In State ex rel. Josephson v. Indus. Comm., 101 Ohio St.3d 195,2004-Ohio-737, a case cited by relator, Sally Josephson sprained her low back at work and she began receiving TTD compensation. Later, she was diagnosed with cancer and surgery was performed in January 2000. On November 7, 2000, the commission determined that the low back sprain was at MMI.
 {¶ 58} By February 2001, Sally Josephson had recovered from chemotherapy and was cleared by her oncologist to begin an exercise program. She moved for reinstatement of TTD compensation based upon the allowed condition that had previously been found to be at MMI.
 {¶ 59} The Josephson court noted that the parties do not contest the initial MMI declaration, nor the principle that TTD can be reinstated notwithstanding that declaration should new and changed circumstances demand.
 {¶ 60} Succinctly summarizing relevant prior case law, theJosephson court states, at ¶ 14-16: *Page 20 
 * * * [I]n [State ex rel. Bing v. Indus. Comm. (1991), 61 Ohio St.3d 424], the claimant's condition temporarily worsened after MMI had been declared. We renewed TTC, reasoning that during the flare-up, claimant was not at MMI, and until she regained that level, she should be compensated with TTC.
 We reached the same result in State ex rel. Conrad v. Indus. Comm. (2000), 88 Ohio St.3d 413, * * * and State ex rel. Value City Dept. Stores v. Indus. Comm., 97 Ohio St.3d 187 2002-Ohio-5810
* * * Conrad described Bing as "recognizing] that claimants who had previously been declared as MMI could experience temporary exacerbation of their condition that justified further treatment or even temporary total disability compensation, as the claimant struggled to recover his or her previous level of well-being." 88 Ohio St.3d at 415-416[.] * * * Similarly, the claimant in Value City experienced a medical deterioration when the leads on her injury-related nerve stimulator failed. This worsening, combined with the favorable prognosis for improvement once those leads were replaced, was enough to resume TTC despite an earlier declaration of MMI.
 These cases establish that, to date, the only new and changed circumstance sufficient to re-entitle a worker to TTC is the worsening of the claimant's allowed conditions accompanied by a prognosis that the worsening is only temporary. * * *
 {¶ 61} Clearly, Josephson does not compel the conclusion that the instant claimant was required to show new and changed circumstances to justify reinstatement of TTD compensation. The instant claimant did not seek to revive the "lumbar disc" claim allowance as a basis for reinstatement of TTD compensation. Unlike the situation inJosephson, the instant claimant sought reinstatement of TTD compensation based upon claim allowances that have never been found to be at MMI.
 {¶ 62} Accordingly, the instant claimant was not required to show new and changed circumstances under the Josephson standard to obtain reinstatement of TTD based upon allowed conditions that have never been found to be at MMI. Moreover, *Page 21 
contrary to relator's assertion, the commission did not abuse its discretion under State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, by failing to explain new and changed circumstances in its order.
 {¶ 63} Parenthetically, the magistrate notes that, if this court were to determine that the commission's MMI determination includes the allowed condition "Degenerative Disc Disease L4-S1," then claimant would be required to show new and changed circumstances with respect to that condition because Dr. Hernandez includes that allowed condition among the three conditions certified by him as causing TTD. Under that scenario, Dr. Hernandez's listing of "Degenerative Disc Disease L4-S1," as among the conditions causing TTD would become problematical for the claimant in the absence of any certification from Dr. Hernandez that the additionally allowed conditions of L4-5 disc protrusion and right foraminal stenosis L4-5 independently cause TTD. State ex rel. Bradleyv. Indus. Comm. (1997), 77 Ohio St.3d 239, 242. In Bradley, it was held that nonallowed conditions do not destroy the compensability of a claim, but the claimant must show that one or more allowed conditions independently caused the disability. Bradley's logic is equally applicable to a physician's listing of multiple allowed conditions where one of those allowed conditions is at MMI.
 {¶ 64} As previously noted, the third issue is whether the C-84s of Dr. Hernandez are some evidence supporting the TTD award beginning February 17, 2004.
 {¶ 65} As previously noted, on his C-84 dated November 23, 2004, Dr. Hernandez certifies a period of TTD beginning February 17, 2004 through an estimated return-to-work date of January 17, 2005. In additional C-84s, Dr. Hernandez extended TTD beyond January 17, 2005. *Page 22 
 {¶ 66} In the C-84 aforementioned, Dr. Hernandez lists November 23, 2004, as the last examination date. According to relator, given that the last examination date is listed as November 23, 2004, the C-84 cannot support TTD for the nine-month period prior to November 23, 2004. Relator cites to no case supporting its claim. Moreover, relator fails to note that Dr. Hernandez's office records show that he initially examined claimant on February 17, 2004 and that he periodically examined claimant during the period prior to November 23, 2004. Thus, relator's suggestion that the nine-month period prior to November 23, 2004 presents a "lengthy period during which a physician did not see or treat the patient" lacks merit. (Relator's brief, at 8.)
 {¶ 67} In its reply brief, citing State ex rel. Genuine Parts Co. v.Indus. Comm., 160 Ohio App.3d 99, 2005-Ohio-1447, relator claims that this court must eliminate Dr. Hernandez's C-84s from evidentiary consideration because, allegedly, the C-84s are inconsistent with his office notes.
 {¶ 68} In Genuine Parts, at ¶ 4, this court reasoned:
 Contrary to the respondent's contention, Dr. Snell's C-84 is not evidence upon which the commission could rely because the C-84 is inconsistent with Dr. Snell's examination notes. Recognizing this inconsistency does not require the weighing of evidence as respondent argues. We give no greater weight to either the C-84 or the examination notes. We simply find, as did the magistrate, that they relate to the same examination and that they are inconsistent. The fact that the inconsistency arises from statements contained in two difference documents rather than in one report is not significant. Again, it is clear that both documents were prepared by Dr. Snell and relate to the same physical examinations. As the magistrate notes, the same rationale was applied in State ex rel. M. Weingold Co. v. Indus. Comm., 97 Ohio St.3d 44, 2002-Ohio-5353, 776 N.E.2d 69, which involved substantial inconsistencies between two C-84s arising from the same examination. *Page 23 
 {¶ 69} The office notes of record dated February 17, March 9, June 3, June 24, July 15, August 12, September 9, October 7, October 21, and November 16, 2004, all contain a heading listing industrial claim number 98-410044, the date of injury, and a diagnosis listed as "DDD L4-S1." In the body of each office note, there is no further mention of the degenerative disc disease, nor is there any mention of the additionally allowed conditions of "L4-5 disc protrusion" and "right L4-5 foraminal stenosis" as finally determined in the deputy's order of November 3, 2004.
 {¶ 70} In the C-84s, Dr. Hernandez lists "Degenerative Disc Disease L4-S1" as one of the three allowed conditions being treated which prevent a return to work.
 {¶ 71} In the magistrate's view, that the office notes fail to mention "L4-5 disc protrusion" and "right L4-5 foraminal stenosis" does not render the C-84s invalid as a matter of law. The office notes can clearly be read as supportive that at least one of the allowed conditions of the claim that is not at MMI caused disability.
 {¶ 72} As a matter of law, the above-described scenario does not render the C-84s lacking in evidentiary value. That Dr. Hernandez's office notes do not mention two of the allowed conditions listed on the C-84s goes to the weight of the evidence which was a matter within the sole discretion of the commission.
 {¶ 73} The fourth issue is whether the commission abused its discretion in failing to address an alleged finding contained in the August 12, 2005 report of Dr. Ghanma that claimant had reached MMI as of January 20, 2004.
 {¶ 74} The fourth issue presented by relator appears to be premised upon relator's misreading of Dr. Ghanma's August 12, 2005 report. *Page 24 
 {¶ 75} In his report, Dr. Ghanma states:
 Question #2: Do you feel there are new and/or changed circumstances to support this request? If so, please describe in detail.
 Answer: In my opinion, there are no new or changed circumstances to support the request for temporary total disability at this time. Mr. Paskalik stated that he has not worked since August 31, 2002. There has been no documentation, to the best of my knowledge, to indicate that there has been any change in his condition over the past three years. As noted in the cover letter, he was deemed to be at maximum medical improvement on January 20, 2004, based on his physical conditions. I am unaware of any new change in his physical condition that would require a new period of temporary total disability or continued treatment.
 Although he does have subjective complaints, they cannot be explained based on the injury of this claim or on the allowed conditions at this time considering normal healing times for similar injuries.
(Emphasis omitted.)
 {¶ 76} The above-quoted statement is clearly a reference to the commission's determination that claimant had reached MMI as of January 20, 2004, the date of the district level hearing. Dr. Ghanma does not render his own opinion on MMI in his August 12, 2005 report. Accordingly, relator's fourth issue lacks merit.
 {¶ 77} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1