DECISION IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Steve Shipley, has filed an original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him temporary total disability ("TTD") compensation from August 12, 2004, through March 3, 2005, and to enter an order granting said compensation.
 {¶ 2} This matter was referred to a magistrate of this court, pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court issue a writ of mandamus ordering the commission to vacate the order of its staff hearing officer ("SHO") dated August 19, 2005, and to enter a new order in compliance with the Ohio Supreme Court's decision in State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203. (Attached as Appendix A.)
 {¶ 3} The commission has filed objections to the magistrate's decision, asserting that the magistrate erred by finding that its SHO did not comply with the requirements of Noll, supra. The commission contends that the magistrate erred by reasoning that an MRI finding constituted "new and changed circumstances."
 {¶ 4} The report of the district hearing officer ("DHO"), dated July 22, 2005, states that the DHO had reviewed two reports of Dr. Mark Fleming, dated August 10, 2004, and September 10, 2004, respectively. The SHO, in a report dated August 19, 2005, similarly cited both reports. Those reports, as noted by the magistrate, indicated that an MRI revealed a "worsening anterospondylolisthesis of L5 on S1," and Dr. Fleming opined that the MRI was consistent with relator's "complaints and problem," and that he must undergo a "fusion revision." The magistrate noted that both the DHO and SHO cited the reports of Dr. Fleming. However, given the information in Dr. Fleming's reports, indicating that relator's condition had worsened, the magistrate found that the matter should be sent back to the commission for an explanation as to how the evidence relied upon would support the conclusion there was no change. Upon review of the stipulated record, including evidence that surgery was apparently approved due to worsening conditions, we find no error with the magistrate's determination that here, where the evidence cited by the commission suggests a different result than the conclusion announced by the commission, the commission's reasoning is critical. Therefore, failure to provide an adequate explanation constitutes an abuse of discretion under Noll.
 {¶ 5} Accordingly, based upon an independent review, we conclude that the magistrate has properly determined the facts and the appropriate law. Therefore, the commission's objections are overruled, and this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law. In accordance with the magistrate's recommendation, a writ of mandamus is granted to the extent the commission is ordered to vacate its SHO's order of August 19, 2005, and to enter a new order in compliance with Noll, supra, either granting or denying relator's motion for TTD compensation.
Objections overruled; writ of mandamus granted.
SADLER and FRENCH, JJ., concur.
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 6} In this original action, relator, Steve Shipley, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him temporary total disability ("TTD") compensation from August 12, 2004 through March 3, 2005, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 7} 1. On March 13, 1987, relator sustained an industrial injury while employed with respondent Lodowici-Celadon, a state fund employer. The industrial claim is allowed for: "Acute low back strain; spondylolisthesis; lumbar spinal stenosis; pseudoarthrosis L4-5, L5-S1; pseudoarthrosis; major depressive disorder single episode," and is assigned claim No. 87-19811.
 {¶ 8} 2. Relator began receiving TTD compensation from the Ohio Bureau of Workers' Compensation ("bureau").
 {¶ 9} 3. On May 29, 2003, at the bureau's request, relator was examined by Robert J. Thompson, M.D. for the allowed physical conditions of the claim. Dr. Thompson reported:
 Has the injured worker reached MMI?
 Yes — For the following reasons:
1. It has been 16 years since the original injury.
 2. He has had the benefit of extensive treatment including 3 surgical procedures, multiple epidural injections, radio-frequency lesioning of multiple medial branches, and other treatment.
 3. Mr. Shipley, himself, reports that his symptoms have basically stabilized and are not getting any better or worse as time goes on.
 Can the injured worker return to his former position of employment?
 No — for the following reasons:
 1. Mr. Shipley's previous job required repetitive bending, lifting and standing. I do not think that he will ever be able to do this type of work in the future.
 Are there any restrictions or modifications?
 Yes:
 1. He would be unable to do any work that required him to sit for more than an hour at a time without being able to get up and move around.
 2. He would be unable to stand or walk for more than 20 minutes at a time without resting.
 3.He would be unable to ever do any repetitive lifting or bending.
 Are there any additional treatment modalities recommended?
 No:
 1. There is no additional treatment that would provide any significant functional improvement.
 2. He may need ongoing symptomatic treatment for his pain including medications.
 {¶ 10} 4. Following an August 19, 2003 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation effective August 19, 2003. The DHO found that the allowed conditions of the claim, both physical and psychological, had reached maximum medical improvement ("MMI"). Dr. Thompson's report was exclusively relied upon to support the determination that the allowed physical conditions had reached MMI. The DHO's termination of TTD compensation was administratively affirmed.
 {¶ 11} 5. On July 6, 2004, relator's treating physician, Ronald P. Linehan, M.D. wrote:
 Steven Shipley returns to the PainCare Center after receiving right L4 and L5 transforaminal epidural steroid injections. He feels that these were of minimal benefit in reducing his radicular symptoms and continues to complain of localized right sided low back pain consistent with sacroiliitis. We discussed various treatment options and he wished to withhold treatment until he undergoes evaluation with Dr. Fleming to determine if he is a candidate for surgical correction.
 He was discharged in satisfactory condition and is scheduled to return on a p.r.n. basis for re-evaluation and possible repeat right L4 and L5 transforaminal epidural steroid injections verses consideration of repeat right sacroiliac joint injections.
 {¶ 12} 6. On August 12, 2004, upon referral from Dr. Linehan, relator consulted with Mark Fleming, M.D., who performed an examination. In his August 12, 2004 report to Dr. Linehan, Dr. Fleming wrote:
 We saw STEVEN SHIPLEY in consultation today August 12th for an ongoing lower back problem. As you know Mr. Shipley is a 50-year-old gentleman who has been through at least three prior surgeries. We [do] have at least the operative reports on the two more recent one[s] which we appreciate. His original surgery was done in 1988 and he thinks it was a fusion. Indirectly from looking at the other records it probably was a fusion or an attempted fusion for an L5, S1 spondylothesis. Apparently in 2000 he had a fusion revision [illegible] extension of that fusion up to 4.5. This was done by Dr. Hood and Dr. Wyatt. Apparently that failed as well and he had a fusion revision also done by Dr. Hood in 2000 also from 4 to 1.
 Generally his symptoms have been primarily of back pain and in general the leg symptoms have been worse in the left. However with long term pain management he now finds that his main complaint is in the right leg. The lower back still exceeds the leg symptoms by a 60/40 ratio. In the legs the right leg is worse than the left by about a 60/40 ratio.
 The symptoms in the leg could easily be radicular. There is usually pain that radiates down the lateral thigh and lateral calf but does not go to the foot. He denies any numbness or tingling. Both the back and leg pain seem to be aggravated by standing.
 He has not had any recent studies, [by] his estimation it was several years ago.
 * * *
 EXAMINATION: On exam, Mr. Shipley is a stocky gentleman in no acute distress. He is somewhat stiff but is able to bend to remove his shoes and socks. He has no obvious restrictions or limitations. He has a normal gait with no limp or antalgia. He has no femoral gait. He has no collapse on heel or toe walking although he has some balance difficulties with heel walking. He has a negative straight leg raising bilaterally. His reflex exam shows diffuse hypereflexia throughout but with no pathologic reflexes. He has no reflex asymmetry. He has a normal sensory exam to pin prick. He has a normal motor exam.
 DIAGNOSIS: History of lumbar instability with fusion with failed fusion.
 DISCUSSION/RECOMMENDATIONS: At this point I do not have a recommendation for him other than his studies be updated. We did discuss MRI versus myelography. I think an MRI may give us all of our answers which is what I recommend to him at this time. If incomplete with respect to identification of nerve root involvement then a myleogram might be necessary but we are going to start with MRI.
 {¶ 13} 7. On September 7, 2004, relator underwent an MRI of the lumbar spine, which was ordered by Dr. Fleming.
 {¶ 14} 8. The MRI was interpreted by Thang Ngo, M.D., whose written impression is as follows:
 1. Worsening anterospondylolisthesis of L5 on S1 This now measures about 1.2 cm anterior subluxation of L5 on S1 compared to 0.9 cm on the previous study. This still demonstrates severe left lateral recess and neural foraminal narrowing and moderate right at L5-S1.
 2. Degenerative disc bulge at L4-5 which causes moderate bilateral neural foraminal narrowing.
 3. Overall, there is worsening degenerative endplate change throughout the lumbar spine compared to the previous MRI exam.
 {¶ 15} 9. On September 10, 2004, relator returned to Dr. Fleming for consultation regarding the MRI results. In his September 10, 2004 report to Dr. Linehan, Dr. Fleming wrote:
 * * * [H]is MRI shows clearly the problem namely that his fusion is [sic] still has not succeeded. He has a progressively spondylothesis of L5 on S1 going from about 9mm to about 1.2mm. I think this is very consistent with his complaints and problem.
 At this point I do not see any other choice other than a fusion revision and [he] really needs to have it instrumented. He might also end up needing a combined front back approach.
 {¶ 16} 10. On October 20, 2004, Dr. Linehan wrote:
 Steven Shipley returns to the PainCare Center after last being seen on July 6, 2004 [at] which time we deferred repeat treatment for both his low back and radicular symptoms until he was seen and evaluated by Dr. Fleming. Dr. Fleming recommended a referral to Dr. Zerick for anterior and posterior fusion secondary to the patient's MRI documented 1.2 cm spondylolisthesis of L5 on S1.
 The patient returns with primary complaints of both continued and worsening low back and radicular pains. After discussion, he wished to proceed with repeat sacroiliac joint injections for his low back pain while awaiting surgical consultation with Dr. Zerick. I feel that this is reasonable and will request approval to provide this service for the patient.
 * * * He will return once approval is received for him to begin a series of right sacroiliac joint injections.
 {¶ 17} 11. On March 4, 2005, relator was examined by William R. Zerick, M.D., who practices neurosurgery. Relator was referred to Dr. Zerick by Dr. Fleming. In his March 4, 2005 report, Dr. Zerick wrote:
 IMPRESSION: Lumbar canal stenosis with pseudoarthrosis, L4-5, L5-S1, with failure to fuse at the L5-S1 level where he has underwent three prior non-instrumented fusions. RECOMMENDATIONS: At this point, I have talked to Steven and his wife about an instrumented fusion at the L5-S1 level, and most likely we would utilize bone morphogenic protein, given his pseudoarthrosis, although typically these non-instrumented fusions fail in patients that have a spondylolisthesis, and again without any instrumentation to hold them until they fuse, they typically do not fuse. I went over the risks and benefits of surgery with him. We will make the arrangements.
 {¶ 18} 12. On a C-84 dated April 4, 2005, Dr. Zerick certified a period of TTD beginning March 4, 2005 to an estimated return-to-work date of June 4, 2005. On the C-84, Dr. Zerick wrote: "Surgery 4-5-05."
 {¶ 19} 13. On April 5, 2005, relator underwent surgery to the lumbosacral spine, which was performed by Dr. Zerick.
 {¶ 20} 14. On April 28, 2005, relator moved for the reinstatement of TTD compensation effective March 4, 2005. In support, relator submitted the reports from Dr. Zerick.
 {¶ 21} 15. On May 4, 2005, the bureau mailed an order granting TTD compensation beginning March 4, 2005 based on reports from Dr. Zerick. Apparently, the bureau's order was not administratively appealed.
 {¶ 22} 16. On May 20, 2005, Dr. Linehan completed a C-84 certifying a period of TTD from August 12, 2004 to an estimated return-to-work date of March 3, 2005. The C-84 form asks the physician whether the claimant is able to return to his position of employment or to other employment. Responding in the negative, Dr. Linehan wrote: "Due to surgery [with] Dr. Zerick."
 {¶ 23} 17. On May 24, 2005, relator moved for TTD compensation for the closed period August 12, 2004 through March 3, 2005. In support, relator submitted Dr. Linehan's C-84, the August 12, 2004 and September 10, 2004 reports from Dr. Fleming, and the MRI report of September 7, 2004.
 {¶ 24} 18. Following a July 22, 2005 hearing, a DHO issued an order denying relator's May 24, 2005 motion. The DHO's order explains:
 The injured worker's request for payment of temporary total disability compensation from 08/12/2004 through 03/03/2005 is denied. The District Hearing Officer notes from the 05/04/2005 BWC order that temporary total disability compensation was granted by the BWC beginning 03/04/2005. The District Hearing Officer also notes the injured worker had surgery on 04/05/2005. The District Hearing Officer has reviewed the reports from Dr. Fleming dated 09/10/2004 and 08/10/2004. However, even though the injured worker may have had symptomatology as of 08/10/2004, the District Hearing Officer is not persuaded that the injured worker's allowed conditions and disability were temporary in nature until the injured worker had surgery performed. In other words, the District Hearing Officer is not persuaded there was truly any change in the injured worker's condition until surgery was performed for the allowed conditions. Therefore, based on the above there is insufficient evidence supporting the payment of temporary total disability compensation for the specific period cited above.
 {¶ 25} 19. Relator administratively appealed the DHO's order of July 22, 2005.
Following an August 19, 2005 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO's order explains:
 The injured worker's request for temporary total compensation from 08/12/2004 through 03/03/2005 remains denied. Temporary total compensation has been previously paid from 03/04/2005 forward. The Staff Hearing Officer notes that the injured worker had surgery on 04/05/2005. In receiving the reports of Dr. Fleming dated 08/10/2004 and 09/10/2004, the Staff Hearing Officer is not persuaded that the injured worker's conditions were temporary in nature until surgery occurred. The Staff Hearing Officer finds that there was no change in the injured worker's condition until surgery was performed for the allowed conditions.
 {¶ 26} 20. On September 8, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of August 19, 2005.
 {¶ 27} 21. On November 2, 2005, relator, Steve Shipley, filed this mandamus action. Conclusions of Law:
 {¶ 28} It is the magistrate's decision that this court issue a writ of mandamus as more fully explained below.
 {¶ 29} Following a commission declaration that an industrial injury is at MMI, TTD compensation can be reinstated notwithstanding that declaration should new and changed circumstances demand. State ex rel.Josephson v. Indus. Comm., 101 Ohio St.3d 195, 197, 2004-Ohio-737;State ex rel. Chrysler Corp. v. Indus. Comm. (1998),81 Ohio St.3d 158-169. (Claimant's need for surgery under the facts of the case constituted a new and changed circumstance.)
 {¶ 30} In Josephson, the court reviewed prior case law and then clarified the standard for determining a request for reinstatement of TTD compensation. The Josephson court explained:
 * * * [I]n [State ex rel.] Bing [v. Indus. Comm. (1991), 61 Ohio St.3d 424] the claimant's condition temporarily worsened after MMI had been declared. We renewed TTC, reasoning that during the flare-up, claimant was not at MMI, and until she regained that level, she should be compensated with TTC.
 We reached the same result in State ex rel. Conrad v. Indus. Comm. (2000), 88 Ohio St.3d 413, 727 N.E.2d 872, and State ex rel. Value City Dept. Stores v. Indus. Comm., 97 Ohio St.3d 187, 2002-Ohio-5810, 777 N.E.2d 249. Conrad described Bing as "recogniz[ing] that claimants who had previously been declared as MMI could experience temporary exacerbation of their condition that justified further treatment or even temporary total disability compensation, as the claimant struggled to recover his or her previous level of well-being." 88 Ohio St.3d at 415-416, 727 N.E.2d 872. Similarly, the claimant in Value City
experienced a medical deterioration when the leads on her injury-related nerve stimulator failed. This worsening, combined with the favorable prognosis for improvement once those leads were replaced, was enough to resume TTC despite an earlier declaration of MMI.
 These cases establish that, to date, the only new and changed circumstance sufficient to re-entitle a worker to TTC is the worsening of the claimant's allowed conditions accompanied by a prognosis that the worsening is only temporary. * * *
Id. at ¶ 14-16.
 {¶ 31} Here, in requesting reinstatement of TTD compensation, relator undertook the burden of showing that one or more of his allowed physical conditions had worsened since the commission's MMI determination and a prognosis that the worsening is only temporary.
 {¶ 32} Here, the DHO states that he is "not persuaded there was truly any change in the injured worker's condition until surgery was performed." In affirming, the SHO "finds that there is no change in the injured worker's condition until surgery was performed * * *." Both the DHO and SHO cite to the August 12, 2004 and September 10, 2004 reports of Dr. Fleming for support of the conclusion that the industrial injury had not worsened until the surgery was performed. While the commission cited evidence upon which it relied, i.e., the two reports from Dr. Fleming, there is no explanation as to how those two reports can lead to the conclusion that the industrial injury had not worsened until the surgery was performed.
 {¶ 33} The syllabus of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, states:
 In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision.
 {¶ 34} Here, both the DHO and SHO orders fail to explain the reasoning as required by Noll as to how the relied upon evidence supports the conclusion that there was no change, i.e., no worsening of any of the allowed physical conditions of the claim until the surgery was performed.
 {¶ 35} The magistrate recognizes that in some cases the commission's reasoning can be obvious from its merely citing to the relied upon evidence. However, that is not the situation here where the evidence cited suggests a different conclusion than the one announced by the commission.
 {¶ 36} In Dr. Fleming's August 12, 2004 report, he recommends that relator undergo an MRI, which was performed on September 7, 2004. The MRI showed a "worsening anterospondylolisthesis of L5 on S1." In his September 11, 2004 report, Dr. Fleming memorializes his post-MRI consultation with relator. Dr. Fleming states that the MRI is very consistent with relator's "complaints and problem" and that relator must undergo a "fusion revision" with instrumentation.
 {¶ 37} Again, the commission's stated conclusion from its reading of Dr. Fleming's two reports is not the obvious conclusion. Thus, the commission's reasoning is critical. The commission's failure to provide its reasoning constitutes an abuse of discretion under Noll.
 {¶ 38} Accordingly, for all of the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its SHO's order of August 19, 2005, and to enter a new order in compliance withNoll that either grants or denies relator's motion for TTD compensation.