THE STATE EX REL. BARNES, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Barnes v. Indus. Comm.,*
114 Ohio St.3d 444, 2007-Ohio-4557.]

———

(No. 2006–1404—Submitted June 5, 2007—Decided September 19, 2007.)

**Per Curiam.**

{¶ 1} Appellant, Jeffrey L. Barnes, was declared to have attained maximum medical improvement in 2002. Two years later, after a new mode of treatment and an exacerbation of the allowed conditions, he sought renewed temporary total disability compensation. Appellee Industrial Commission of Ohio denied his request without addressing either of these factors. We must determine whether the commission abused its discretion in so doing.

## Case Background

{¶ 2} Barnes injured his back at work on May 26, 2000, and a workers' compensation claim was allowed for "sprain lumbosacral; disc degeneration at L3–4 and L4–5; central disc protrusion at L4–SI." He began receiving temporary total disability compensation shortly thereafter.

{¶ 3} The parties do not dispute that in late 2001, the Bureau of Workers' Compensation granted Barnes's request for epidural steroid injections. For reasons unknown, Barnes delayed those injections.

{¶ 4} On March 18, 2002, Barnes's employer, Three Little Pigs, Ltd., d.b.a. Hoggy's, moved to terminate temporary total disability compensation based on maximum medical improvement. The commission granted that motion:

{¶ 5} "This finding was made in reliance upon the 02/12/2002 report of Dr. Zellers and the examination and addendum reports from Dr. Season. The Staff Hearing Officer has considered the claimant's argument that both of those reports were conditioned upon the claimant not undergoing specific named further treatment. In light of the fact that the claimant has not undergone either the epidural injections or the rehabilitation and work hardening programs discussed in those two reports, notwithstanding the past significant amount of time, the Staff Hearing Officer finds that these reports plainly and properly support the finding of maximum medical improvement, and constitute the weight of the evidence. It is particularly noteworthy that although epidural injections were approved as long ago as 11/06/2001, they have not yet been done." That order became final.

{¶ 6} In March 2003, Barnes saw Dr. Charles B. May because of continuing low back pain. Dr. May recommended that Barnes see a neurosurgeon. On June 23, Barnes met with Dr. Robert A. Dixon, who performed a diskogram that revealed a 50 percent "loss of disk height" and "grade II tearing." Dr. Dixon recom-

mended a PLDD (pericutaneous laser disc decompression) procedure, which the bureau approved on September 19, 2003. That procedure was successfully performed and was followed by an IDET (intradiscal electrothermal therapy) annuloplasty on November 4, 2003. A physical-medicine rehabilitation program was to complement those procedures.

{¶ 7} Dr. Dixon recommended that Barnes change jobs because of the heavy lifting, bending, and twisting that his former position involved, and Barnes began seeking work consistent with the physical restrictions he was given. In April 2004, while looking for work, Barnes experienced sudden radiating right-leg pain that caused his leg to buckle and him to fall. Immediately, Barnes experienced increased severe back pain. He was re-examined by Dr. May on April 28, 2004, and went to the emergency room the next day because of increasing back pain.

{¶ 8} On June 8, 2004, Barnes moved to have temporary total disability compensation reinstated from April 20, 2004, forward. A district hearing officer denied that request on September 10, 2004:

{¶ 9} "Temporary total compensation was terminated by the orders of 05/31/2002 and 07/22/2002 on the basis of maximum medical improvement. Both orders listed the lack of treatment as a factor. Epidural injection had been authorized, but the injured worker did not undergo such in 2002. In 2003 treatment became more active. However, the hearing officer does not feel that the renewed treatment changes the status of the injured worker's extent of disability as found by the 05/31/2002 and 07/22/2002 orders."

{¶ 10} A staff hearing officer affirmed:

{¶ 11} "[T]here are no new and changed circumstances since the previous finding of the Staff Hearing Officer on 07/22/2002 that the injured worker has reached maximum medical improvement. The injured worker argues that since that finding of maximum medical improvement on 07/22/2002, the injured worker has undergone epidural injections and has been enrolled in vocational rehabilitation. However, the Staff Hearing Officer is not persuaded by this argument. The Staff Hearing Officer order on 07/22/2002 indicates that the epidural injections had been approved prior to his finding of maximum medical improvement, but that the injured worker had yet to undergo those epidural injections as of 07/22/2002. That order terminating temporary total compensation for the reason of maximum medical improvement also indicated that rehabilitation had been recommended, but that the injured worker had not yet undergone these services. The fact that the injured worker later undergoes the recommended treatment does not persuade the Staff Hearing Officer today that the injured worker has again become temporarily and totally disabled." Further appeal was refused.

{¶ 12} Barnes filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in

refusing to reinstate temporary total disability compensation. Barnes argued that the commission had failed to discuss either the more active treatment that he had commenced in 2003 or the April exacerbation as new and changed circumstances warranting renewed compensation. He asked for a writ of mandamus ordering the commission to reinstate temporary total disability as of April 20, 2004, or that the cause be returned for further consideration. The court of appeals denied the writ after concluding that the lack of discussion established that Barnes had never raised these points administratively.

{¶ 13} Barnes now appeals to this court as of right.

### Legal Analysis

{¶ 14} Maximum medical improvement is "a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function." Ohio Adm.Code 4121–3–32(A)(1). R.C. 4123.56(A) designates maximum medical improvement as one of four statutory bases for denying temporary total disability compensation.

{¶ 15} The litigants do not challenge the initial maximum-medical-improvement declaration or the principle that temporary total disability compensation can be reinstated, notwithstanding that declaration, if new and changed circumstances demand. See *State ex rel. Bing v. Indus. Comm.* (1991), 61 Ohio St.3d 424, 426, 575 N.E.2d 177. We have recognized that a temporary worsening, or flare-up, of a claimant's condition can warrant renewed temporary total disability compensation as the claimant struggles to return to the former baseline. Id. at 427, 575 N.E.2d 177. A mere increase in treatment or change in the treatment method does not, however, automatically compel renewed temporary total compensation. Increased or different treatment does not automatically establish that the claimant's condition has worsened.

{¶ 16} The commission appears to have denied Barnes's request for renewed compensation on that basis, but no commission order mentions his documented exacerbation of his condition in late April 2004. Because it is unclear whether the commission was aware of this incident or inadvertently overlooked evidence of it, we grant Barnes's request for a return of his case to the commission for further consideration and an amended order.

{¶ 17} The court of appeals denied the writ after finding no express indication in either hearing-officer order that Barnes had raised administratively the issue of exacerbation (and renewed treatment) as a new and changed circumstance. The court reasoned that because the commission speaks exclusively through its orders, *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.* (1994), 71 Ohio

St.3d 139, 142, 642 N.E.2d 378, the lack of reference to the exacerbation meant that Barnes had never raised it. *State ex rel. Barnes v. Indus. Comm.,* Franklin App. No. 05AP–298, 2006-Ohio-3082, 2006 WL 1669713, ¶ 9.

{¶ 18} We decline to adopt this reasoning because it conflicts with other key evidentiary cases and concepts. For example, in the seminal case of *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 173, 31 OBR 369, 509 N.E.2d 946, an order denying permanent total disability that made no reference to the claimant's nonmedical disability factors was returned to the commission "for consideration of said factors, if previous consideration had not been given, and an amended order stating the commission's findings after such consideration." We did not assume that the lack of reference demonstrated that claimant had not raised her nonmedical factors at hearing.

{¶ 19} We reached the same result in another case, *State ex rel. Fultz v. Indus. Comm.* (1994), 69 Ohio St.3d 327, 631 N.E.2d 1057. There, the commission's failure to include two key reports in a list of evidence considered at a permanent total disability hearing prompted the conclusion that the commission had either inadvertently or intentionally ignored these documents. It was not assumed that the claimant did not submit and discuss those reports at hearing. Id. at 329, 631 N.E.2d 1057.

{¶ 20} The court of appeals' rationale puts all litigants in an untenable position, since the commission is required to list in its order only the evidence that it has *relied* upon. *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1983), 6 Ohio St.3d 481, 483–484, 6 OBR 531, 453 N.E.2d 721. The commission need not list all of the evidence considered. *Fultz,* 69 Ohio St.3d at 329, 631 N.E.2d 1057. Thus, the failure to list a particular piece of evidence cannot be interpreted as proof that the evidence was not submitted. This logic applies equally to the larger question of issues raised. In many cases, a commission's given finding can moot the consideration and discussion of other issues. For example, a finding that a claimant was disabled at the time of an employment separation moots any discussion of the voluntariness or involuntariness of departure. Consequently, reference to the departure issue may not appear in the commission's order, but its absence does not mean that the claimant did not also argue at hearing that the separation was involuntary.

{¶ 21} Finally, as Barnes persuasively points out, any presumption of regularity that might attach to the commission's deliberations in this case is undermined by the fact that the commission orders at issue did not even properly identify the issue before it. The issue was captioned a "request to terminate temporary total," which was a misstatement. The issue was to reinstate, not terminate, compensation. These circumstances cast doubt on whether the commission's order was a definitive declaration of what transpired at the hearing.

{¶ 22} Accordingly, the judgment of the court of appeals is reversed, and the commission is ordered to consider the claim further and issue an amended order.

Judgment reversed
and writ granted.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

---

Philip J. Fulton Law Office, Philip J. Fulton, and William A. Thorman III, for appellant.

Marc Dann, Attorney General, and Derrick L. Knapp, Assistant Attorney General, for appellee Industrial Commission.