DECISION
{¶ 1} Kelsey Hayes Company has filed this action in mandamus, seeking a writ to compel the Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to Arthur Grashel. *Page 2 
 {¶ 2} In accord with Loc. R. 12, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we grant a limited writ of mandamus which compels the commission to vacate its earlier award of PTD compensation and to issue a new order which reflects consideration of the issues of whether or not Grashel voluntarily abandoned the workforce in 2004.
 {¶ 3} No party has filed objections to the magistrate's decision. The case is now before the court for review.
 {¶ 4} No defect or error of law or fact is present on the face of the magistrate's decision. We, therefore, adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we grant a limited writ of mandamus, compelling the commission to vacate its award of PTD compensation to Arthur Grashel and to enter a new order either granting or denying PTD compensation after considering the issue of whether or not Grashel voluntarily abandoned the workforce in 2004.
Limited writ of mandamus granted.
 BROWN and McGRATH, JJ., concur. *Page 3 
 (APPENDIX A) MAGISTRATE'S DECISION Rendered on November 13, 2008 Critchfield, Critchfield Johnston, Ltd., and Susan E. Baker, for relator.
Philip J. Fulton Law Office, Philip J. Fulton and William A. Thorman,III, for respondent Arthur Grashel.
Nancy H. Rogers, Attorney General, and Rema A. Ina, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} Relator, Kelsey Hayes Company, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of *Page 4 
Ohio ("commission") to vacate its award of permanent total disability ("PTD") compensation to respondent Arthur Grashel ("claimant") and ordering the commission to find that claimant is not entitled to that compensation because claimant had voluntarily abandoned the workforce in 2004.
Findings of Fact: {¶ 6} In 2001, claimant began experiencing respiratory problems while working on the machining side of the plant. Ultimately, claimant's workers' compensation claim was allowed for "hypersensitivity induced reactive upper airway disease; hypersensitivity pneumonitis."
 {¶ 7} Claimant was able to return to work with the restriction that he work on the assembly side of the plant.
 {¶ 8} Claimant left his employment with relator on September 20, 2004. There are no records in the stipulated evidence relating to claimant's departure from the workforce and no medical evidence of a problem; however, claimant testified that the departure was due to an exacerbation of his lung conditions.
 {¶ 9} It is undisputed that claimant did not attempt to return to any employment after September 20, 2004.
 {¶ 10} In October 2004, claimant filed a motion for temporary total disability ("TTD") compensation. The matter was heard before a staff hearing officer ("SHO") on February 22, 2005 and was denied. The SHO stated:
 Temporary total disability compensation is specifically disallowed for the requested period of 9/20/2004 through 11/15/2004. The Staff Hearing Officer relies on the report of Dr. Rosenberg dated 11/24/2004 in denying this period of disability. Dr. Rosenberg opined that the injured worker's *Page 5 
"exacerbation" is consequent to his smoking-related chronic obstructive pulmonary disease. He bases this opinion on the fact that the injured worker's chest x-ray revealed hyperaeration compatible with chronic obstructive pulmonary disease. He also indicated that the injured worker has mild obstructive lung disease related to his long and continued smoking history based on the injured worker's carboxyhemoglobin level being increased. Dr. Rosenberg opined that the injured worker is not totally disabled as a result of the allowed conditions in this claim. He further noted that although the injured worker is claiming an "exacerbation" of his allowed conditions, Dr. Rosbenberg [sic] notes that the injured worker's pulmonary function test revealed mild air-flow obstruction similar to what he displayed two years ago, thereby opining that there has been no significant change.
 {¶ 11} Claimant filed an application for PTD compensation on May 5, 2005. In support, claimant attached the January 10, 2005 report of his treating physician, Charles A. Pue, M.D., who opined that claimant was not able to return to his former position of employment and indicating that claimant could return to employment in the future in a nonmetal work environment.
 {¶ 12} Claimant was examined by David M. Rosenberg, M.D., who issued a report dated June 6, 2005. In that report, Dr. Rosenberg noted that he previously evaluated claimant in November 2004. After examining the records from Dr. Pue, Dr. Rosenberg concluded that claimant's allowed conditions did not render him permanently and totally disabled. Further, Dr. Rosenberg noted that claimant suffered from chronic obstructive pulmonary disease related to his history of smoking cigarettes. In opining that claimant was not permanently and totally disabled, Dr. Rosenberg stated:
 * * * The file and previous evaluations clearly demonstrate that Mr. Grachel [sic] has a mild to moderate degree of stable airflow obstruction, without functional deterioration over the last several years. During this timeframe[,] he has *Page 6 
continued to smoke. It should be emphasized, despite Dr. Pue's opinion, symptoms of fatigue and laryngitis are not physiologically related to "hypersensitivity-induced reactive airways disease" or hypersensitivity pneumonitis (HP). Clearly, HP does not exist at the present time. Specifically[,] on X-ray, he has no interstitial disease, with a normal diffusing capacity, and no restriction. "Hypersensitivity-induced reactive airways disease" would imply the presence of asthma, something which Mr. Grachel [sic] does not currently have. He simply has stable chronic obstructive pulmonary disease, without symptoms related to reactive airways. There is no physiologic explanation for his complaints of weakness and fatigue related to workplace exposures of metal working fluid. These are nonspecific symptoms and have not been associated with specific flaring of an allowed respiratory disorder. In addition, as an aside, the mild obstruction noted at the time of my evaluation, based on the predicted norms of Knudson, clearly are not permanently disabling. Clearly, if he can ride a motorcycle and go camping, he can perform some form of remunerative employment.
 {¶ 13} At the request of the commission, claimant was examined by John W. Cunningham, M.D., who issued a report dated July 26, 2005. After noting his physical findings upon examination and identifying the records which he reviewed, Dr. Cunningham opined that claimant's allowed conditions had reached maximum medical improvement ("MMI"). He noted that claimant's most recent pulmonary function test in June 2005 was somewhat worse than prior studies and determined that claimant had a 25 percent whole person impairment due to the allowed conditions. Dr. Cunningham concluded that claimant could perform at a medium level as follows:
 * * * This individual is not able to work in the environment in which he was previously employed by the above employer without wearing respiratory protection, i.e., a respirator, throughout the work shift when on the shop floor.
 However, this individual is not impaired from performing numerous other types of employment, provided he is not *Page 7 
exposed to the same substances which caused his respiratory symptomatology as he was when he was working for the above employer. Consequently, his Physical Strength Rating Form on this date is completed by assuming that this individual either is wearing appropriate respiratory protection while working for the above employer in his former environment, or working in a different work environment without exposure to the offending substances causing his symptoms. Consequently, in my medical opinion, this individual is capable of at least medium physical work activity, and a Physical Strength Rating Form in this regard has been attached to this report for your review. * * *
 {¶ 14} Claimant's application for PTD compensation was heard before an SHO on October 12, 2005 and was denied. The SHO relied upon the reports of Drs. Rosenberg and Cunningham and a vocational assessment prepared by Janet Kilbane. The SHO concluded that claimant was not permanently and totally disabled as follows:
 * * * [B]ecause the injured worker retains the physical capacity to perform sedentary, light, and medium level work, with the only restriction being no exposure to metal working fluid, and because the injured worker is vocationally qualified by his age and education, with the ability to read, write, perform basic math, and having supervisory skills, the Staff Hearing Officer finds that the injured worker is capable of sustained remunerative employment and is not permanently and totally disabled. As such, the IC-2 application filed 05/05/2005 is denied.
 {¶ 15} Claimant filed his second application for PTD compensation on July 18, 2007. In support of his application, claimant filed the June 11, 2007 report of Dr. Pue, who indicated:
 To summarize, Mr. Arthur Grashel is permanently and totally disabled as a result of his lung injury as an employee at the TRW Plant at Mt. Vernon, Ohio. We did have the patient return to work initially, but he developed reexacerbation and had to be removed from the facility again in 2004. He has been maintained away from the facility indefinitely since that time. With his continued abnormal pulmonary function tests, *Page 8 
it is reasonable to conclude that he is now permanently and totally disabled and unable to return to employment.
 {¶ 16} Claimant was examined by Herbert A. Grodner, M.D., who issued a report dated September 12, 2007. After reviewing claimant's history, noting his findings upon examination, and indicating the medical records which he reviewed, Dr. Grodner noted that claimant's hypersensitivity pneumonitis had completely resolved and there was no evidence of chronic sequelae resulting from his hypersensitivity pneumonitis. Dr. Grodner concluded:
 * * * [I]t is my opinion to a reasonable degree of medical certainty that Mr. Grashel is not permanently and totally disabled and unable to perform any sustained remunerative activity solely as a result of his allowed conditions of hypersensitivity induced reactive airway disease and hypersensitivity pneumonitis. Mr. Grashel should not be exposed to metal working fluid and also should not be exposed to other noxious pulmonary irritants. These would include fumes, dust and temperature extremes. However, in "clean environment", it is my opinion that Mr. Grashel could perform sedentary activity. As I have noted in previous correspondences, "clean environment" is somewhat of an oxymoron, but utilizing standards of the community, a clean environment would include most work environments that are not provocative from a respiratory standpoint.
(Emphases sic.)
 {¶ 17} Claimant was also examined by Andrew Freeman, M.D., who issued a report dated November 27, 2007. Dr. Freeman concluded that claimant's allowed conditions had reached MMI, assessed a 26 percent whole person impairment, and opined that claimant was capable of performing sedentary work provided that he avoid exposure to aerosolized metal working fluids and to environments containing pulmonary irritants, such as fumes, dusts, and temperature extremes. *Page 9 
 {¶ 18} A hearing was held before an SHO on April 16, 2008. At that time, relator argued, in part, that claimant was precluded from receiving PTD compensation due to his voluntary departure from the workforce. Claimant had retired in 2007 and yet, it is undisputed that claimant last worked in 2004. Because claimant had not sought any vocational rehabilitation or any other work, relator argued that he was not entitled to an award of PTD compensation. The SHO granted claimant's PTD compensation. The SHO relied upon the June 11, 2007 report of Dr. Pue who opined that claimant was permanently and totally disabled. The SHO did not address relator's argument that claimant had voluntarily abandoned the workforce.
 {¶ 19} Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165. *Page 10 
 {¶ 21} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 22} Relator contends that it was an abuse of discretion for the commission to grant claimant PTD compensation without addressing the issue raised by relator, specifically, that claimant had voluntarily abandoned the workforce in 2004 and had failed to seek vocational rehabilitation or any other employment. In its brief, the commission concedes that this was error. In his brief, claimant argues that he testified his retirement in 2007 was primarily because of his health problems, in spite of the fact that he actually stopped working in 2004. Claimant cites the Supreme Court of Ohio's decision in State ex rel.Barnes v. Indus. Comm., 114 Ohio St.3d 444, 2007-Ohio-4557, and argues that the court has rejected the argument that the commission needs to discuss all arguments raised in its orders. However, for the reasons that follow, it is this magistrate's conclusion that Barnes does not apply to the facts here and that this court should grant relator's request for a writ of mandamus. *Page 11 
 {¶ 23} In Barnes, the court reiterated that the commission is not required to list all the evidence considered and that this logic applies equally to the larger questions of issues raised. The court specifically noted that, in many cases, a specific finding made by the commission can render moot the consideration and discussion of other issues. As an example, the court noted that a finding that a claimant was disabled at the time of an employment separation would moot any discussion of the voluntariness or involuntariness of the claimant's departure. As such, the court noted that reference to the departure issue may not appear in the commission's order.
 {¶ 24} In the present case, it is undisputed that claimant left the workforce with relator in September 2004. Further, it is also undisputed that the commission denied claimant's first application for PTD compensation in October 2005 based upon the finding that he was capable of performing sedentary, light, and medium level work with the only restriction being no exposure to metal working fluid. Although claimant testified that he left the workforce due largely to his allowed conditions, claimant did not submit any medical evidence indicating that his departure from the workforce was due to the disabling aspects of his allowed conditions. In denying his second application, the SHO did not rely on medical evidence related to the time claimant left the workforce. Unlike the situation identified in Barnes, the commission's determination that claimant was permanently and totally disabled did not render moot the issues raised by relator given that claimant had left the workforce in September 2004, been denied PTD compensation in October 2005 when it was determined that he was capable of performing up to medium level work, and then reapplied for PTD compensation in July 2007 without pursuing any vocational rehabilitation or otherwise seeking employment. *Page 12 
Claimant also argues that, since the same SHO heard his application for TTD compensation in 2005, his first application for PTD compensation in 2005, and his second application for PTD compensation, it was unnecessary for the SHO to mention relator's argument. According to claimant, the SHO was well aware of his situation. However, upon review of the transcript from the hearing on claimant's first application for PTD compensation, the magistrate notes that the voluntary abandonment issue was neither raised nor addressed. The issue was first raised at the hearing on claimant's second application for PTD compensation. As such, Ohio Adm. Code 4121-3-34(D)(1)(d) requires the commission to consider claimant's medical condition in 2004 when he left the workforce. Based upon this order, it cannot be determined whether the issue of voluntary abandonment was considered. Contrary to claimant's argument, relator is not asking this court to reweigh the evidence. Relator is simply asking that the commission address the issue in an order. Because the issue of voluntarily abandonment was raised by relator, the magistrate concludes that it was an abuse of discretion for the commission not to address this issue.
 {¶ 25} Based on the foregoing, it is this magistrate's conclusion that relator has demonstrated that the commission abused its discretion by granting claimant PTD compensation without addressing relator's argument that claimant had voluntarily abandoned the workforce and failed to seek retraining or other employment and this court should issue a writ of mandamus ordering the commission to vacate its order *Page 13 
 {¶ 26} granting claimant PTD compensation and to reconsider the matter after taking relator's voluntary abandonment argument into consideration.
 STEPHANIE BISCA BROOKS, MAGISTRATE *Page 1