[Cite as *State ex rel. Thistledown v. Person*, 2024-Ohio-1449.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Jack Thistledown Racino, LLC, | : | |
| Relator, | : | |
| v. | : | No. 23AP-20 |
| Chanel Person et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on April 16, 2024

**On brief:** *Buckley King*, and *Elizabeth Crosby*, for relator.

**On brief:** *Dworken & Bernstein Co., L.P.A.*, and *Kristen M. Kraus*, for respondent Chanel Person.

**On brief:** *Dave Yost*, Attorney General, and *John Smart*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

BEATTY BLUNT, J

{¶ 1} Relator, Jack Thistledown Racino, LLC, seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission") to vacate its order granting respondent, Chanel Person ("claimant") temporary total disability ("TTD") compensation and to reinstate the order of the commission staff hearing officer ("SHO") denying TTD compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. The magistrate considered the action on its merits and issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate concluded that the commission did not abuse its discretion when it

found that claimant was entitled to TTD compensation and further, that the commission's order granting reconsideration of the SHO's order denying TTD compensation did not lack any legal basis supporting continuing jurisdiction over the case. Accordingly, the magistrate recommended this court deny relator's request for a writ of mandamus.

**{¶ 3}** No objections have been filed to the magistrate's decision. "If no timely objections are filed, the court may adopt a magistrate's decision unless the court determines that there is an error of law or other defect evident on the face of the decision." Civ.R. 53(D)(4)(c).

**{¶ 4}** Upon review, we have found no error in the magistrate's findings of fact or conclusions of law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and the conclusions of law therein, and conclude that relator failed to demonstrate it is entitled to a writ of mandamus. In accordance with the magistrate's decision, the requested writ of mandamus is denied.

*Writ of mandamus denied.*

MENTEL, P.J., and EDELSTEIN, J., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Jack Thistledown Racino, LLC, | : | |
| Relator, | : | |
| v. | : | No. 23AP-20 |
| Chanel Person et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on January 17, 2024

*Buckley King*, and *Elizabeth Crosby*, for relator.

*Dworken & Bernstein Co.*, *L.P.A.*, and *Kristen M. Kraus*, for respondent Chanel Person.

*Dave Yost*, Attorney General, and *John Smart*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 5} Relator Jack Thistledown Racino, LLC seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting respondent Chanel Person ("claimant") temporary total disability ("TTD") compensation and to reinstate the order of the commission staff hearing officer ("SHO") denying TTD compensation.

**I. Findings of Fact**

{¶ 6} 1. On July 14, 2019, the claimant sustained an injury in the course of and arising out of her employment with relator. In a Bureau of Workers' Compensation ("BWC") first report of an injury, occupational disease or death ("FROI" or "FROI-1") form signed by the claimant on July 14, 2019, the claimant's injury was described as follows: "Fell backward, stumble back on box fan placed on floor." (Stip. at 43.) The claimant's workers' compensation claim was initially allowed for contusion of lower back and pelvis (buttock).

{¶ 7} 2. On June 19, 2019, Louis J. DeMicco, D.O., conducted an initial examination of the claimant. At a follow-up appointment on August 28, 2019, Dr. DeMicco noted the claimant's statement that she stopped working for relator "because the back was bothering her and she was having trouble climbing in and out of the car." (Stip. at 436.) However, at that time, the claimant continued to work as a driver for the Greater Cleveland Regional Transit Authority ("RTA").

{¶ 8} 3. On October 23, 2019, based on Dr. DeMicco's reports, the following conditions were additionally recognized in the claim: strain of muscle, fascia and tendon of lower back (lumbar); and strain of muscle fascia and tendon of lower back (thoracic).

{¶ 9} 4. A commission district hearing officer ("DHO") issued an order on June 19, 2020 finding the claimant had a permanent partial disability of five percent.

{¶ 10} 5. On July 31, 2020, the claimant underwent an MRI through the lumbar spine. Based on the MRI, Michael J. Paley, M.D., indicated in a report the following: "Slight disc bulge and hypertrophic changes of the posterior element at L3-4. Facet hypertrophy produces mild left-sided foraminal stenosis at L4-5. Grade 1 anterior spondylolisthesis, bulging of the disc and facet arthrosis produce moderate to severe right and severe left-sided foraminal stenosis at L5-S1. There is left and probable right L5 nerve root impingement." (Stip. at 520.)

{¶ 11} 6. On March 10, 2021, Sami E. Moufawad, M.D., examined the claimant for purposes of an electrodiagnostic study of the lumbar spine and lower limbs. Dr. Moufawad stated that "[t]he electrodiagnostic findings are compatible with bilateral L5 motor radiculopathy as seen on needle EMG" and that "[t]he prolonged F waves and absent H reflex on the right side is also compatible with S1 radiculopathy with mainly proximal demyelination." (Stip. at 550.)

{¶ 12} 7. A DHO ordered on May 19, 2021 that the claim additionally be allowed for the conditions of substantial aggravation of pre-existing spondylolisthesis L5-S1, and L5-S1 radiculopathy. On July 3, 2021, an SHO affirmed the DHO's May 19, 2021 order.

{¶ 13} 8. Dr. DeMicco submitted a series of MEDCO-14 physician's report of work ability ("MEDCO-14") forms beginning with a MEDCO-14 form dated May 25, 2021. In the May 25, 2021 MEDCO-14, Dr. DeMicco indicated that the claimant could not do the job held on the date of injury from March 17 to June 30, 2021. Dr. DeMicco completed additional MEDCO-14 forms on the following dates: June 24, 2021, July 15, 2021, August 23, 2021, August 25, 2021, October 21, 2021, November 23, 2021, December 23, 2021, January 20, 2022, February 17, 2022, March 24, 2022, April 21, 2022, and May 19, 2022. In the May 19, 2022 MEDCO-14, Dr. DeMicco indicated the claimant could not do the job held on the date of injury from March 17, 2021 to June 30, 2022.

{¶ 14} 9. The claimant submitted a C-86 motion dated July 2, 2021 requesting that TTD compensation be paid from March 16, 2021 and to continue. The claimant also submitted a C-84 request for temporary total compensation form dated July 2, 2021. In the C-84 request, the claimant stated that she last worked anywhere on March 8, 2021 and that the reason for leaving work was "pain/injury." (Stip. at 687.) The claimant filed additional C-84 requests dated July 6, 2021 and August 3, 2021.

{¶ 15} 10. In an order dated September 1, 2021, a DHO granted the claimant's July 2, 2021 C-86 motion and awarded TTD compensation from March 17 to August 26, 2021 and to continue based on submission of supporting medical proof. The DHO stated the order was based on the claimant's testimony, the notes of Dr. DeMicco, and Dr. DeMicco's MEDCO-14 forms dated July 15, 2021 and August 24, 2021.

{¶ 16} 11. At the request of the BWC, Howard A. Pinsky, D.O., conducted an independent medical examination of the claimant on November 22, 2021. Based on the examination and taking into consideration only the allowed conditions in the claim, Dr. Pinsky opined that the claimant was not capable of returning to her position of employment held as a driver on the date of the injury, noting that the claimant was "limited in her lifting, bending, and carrying activities." (Stip. at 530.) Dr. Pinsky further opined that "[c]onsidering prior treatment and current treatment which would provide supportive care, it is my opinion, MMI is present." (Stip. at 530.)

{¶ 17} 12. On January 4, 2022, a DHO denied a motion filed by the administrator of BWC to terminate the claimant's TTD compensation. The DHO found that "the allowed conditions in this claim have not reached a level of maximum medical improvement." (Stip. at 685.)

{¶ 18} 13. Ralph J. Kovach, M.D., conducted an independent medical examination of the claimant on March 30, 2022 on the issue of disputed requests for treatments. Dr. Kovach recommended that claimant "should have a consultation with spinal surgeon." (Stip. at 535.)

{¶ 19} 14. On April 30, 2022, Teresa Kay Larsen, D.O., conducted an independent medical examination of the claimant and completed a report. Regarding whether the claimant became totally disabled on March 19, 2021 as a result of her July 14, 2019 injury, Dr. Larsen stated in the report the following:

> Based on a reasonable degree of medical certainty, examination of the claimant, and review of the medical records, it is my opinion that the claimant did not become totally disabled from the injuries in this claim on 03/19/2021. Review of the records reveals that the claimant continued working as a bus operator for RTA following the injury on 7/14/19. The examinations of Dr. DeMicco document similar lumbar findings over the years from 2019 through 2022, with no examination finding to support the change in her work ability. Review of the examinations by other providers over this period of time reveal reports of a pain level of 0 on 8/30/19, no back pain on her DOT physical examination on 8/19/20, and no radiating pain, numbness, or weakness on her Cleveland Clinic evaluation on 12/11/21. The lumbar injury in this case was mild in nature, and she was able to continue full time employment. The physical therapy visits indicate pain behavior which is out of proportion to the nature of the injury and her full-time employment status over the years. Review of the prior independent medical examinations also reveals significant pain behavior. On my examination, there is significant pain behavior, including on straight leg raise testing with pain reported on ankle motion prior to the leg being straightened. There are no physical findings to support any neurological deficit or active radiculopathy. Her pain behavior and the inconsistencies on review of the records raise concern for the reliability of her presentation. While it is noted that new conditions have been included in the claim, her pain behavior and findings are essentially unchanged over the years since her injury.

(Stip. at 673.) Dr. Larsen opined that the claimant had reached maximum medical improvement ("MMI") for all allowed conditions in the claim. Furthermore, Dr. Larsen opined that based on the allowed conditions in the claim, the claimant was able to return to work as a valet with relator and was able to return to work as a bus driver for RTA.

{¶ 20} 15. In a letter dated May 28, 2022, Dr. DeMicco responded to Dr. Larsen's report, stating that the claimant "most certainly cannot work with the allowed conditions in her claim." (Stip. at 388.) Dr. DeMicco further stated that the claimant "is not Maximum Medical Improved at this time." (Stip. at 388.)

{¶ 21} 16. In an order dated June 16, 2022, an SHO vacated the September 1, 2021 DHO order and denied the claimant's July 2, 2021 C-86 motion. The SHO found there was insufficient medical evidence presented to support that the claimant "was and is temporarily and totally disabled independently due to the allowed conditions of this claim." (Stip. at 30.) Relying on the March 22, 2022 report of Dr. Larsen, the SHO made the following findings:

> The Injured Worker continued to work after this injury with this Employer and RTA, until she went full time with RTA and quit this Employer in 2019. She continued to work full time with RTA until she went off work on 03/17/2021 because "she could no longer do the job". In the interim, she had an intervening injury on 05/10/2020. She had a significant fall in which she fractured her right wrist. She was off work until August of 2020 due to that injury. She then had a subsequent incident on 12/11/2021. Dr. Larsen reviewed the extensive medical records, including the records from the Injured Worker's two intervening falls. She noted the Injured Worker's significant pain behavior noted throughout the medical records, and the unchanged symptomatology noted in her physician of record notes from 2019 through 2021. The Hearing Officer finds that there have been no changes to justify temporary total disability compensation suddenly beginning on 03/17/2021 for the allowed conditions of this claim, in which there was never any temporary total disability compensation paid previously.
>
> The Hearing Officer does not find the opinion of Louis DeMicco, D.O., persuasive or sufficient to justify temporary total disability compensation in this claim without any plausible explanation given the two intervening injuries and the lack of any change in symptomatology or objective findings since 2019. The Hearing Officer acknowledges the additional allowances ordered by an Staff Hearing Officer on

> 06/30/2021, yet those additional conditions were based upon medical evidence such as an MRI performed on 07/3/2020. Again, the Injured Worker's symptomatology from 2019 through 2021 did not change or fluctuate. Thus, the Hearing Officer finds a lack of any new and changed circumstances to justify temporary total disability compensation two years post injury. Thus, the request for temporary total disability beginning [March 17, 2021], is denied.

(Stip. at 30-31.)

{¶ 22} 17. On June 16, 2022, the same date as the SHO order denying TTD compensation, an SHO issued an order that vacated the January 4, 2022 DHO order and granted the motion filed by the BWC administrator to terminate the claimant's TTD compensation. Based on the report of Dr. Larsen, the SHO found the claimant had reached MMI for the allowed physical conditions in the claim. Therefore, the SHO terminated the claimant's TTD compensation effective June 6, 2022.

{¶ 23} 18. The claimant filed a brief in support of an appeal from the June 16, 2022 SHO order denying TTD compensation.[1] On July 6, 2022, two SHOs issued an order on behalf of the commission refusing the claimant's appeal from the June 16, 2022 SHO order denying TTD compensation.

{¶ 24} 19. The claimant filed a request for reconsideration from the July 6, 2022 order of the commission. In an interlocutory order dated August 30, 2022, the commission vacated the July 6, 2022 order. The commission found that the claimant "presented evidence of sufficient probative value to warrant adjudication of the Request for Reconsideration regarding the alleged presence of a clear mistake of law of such character that remedial action would clearly follow." (Stip. at 4.) The commission stated that "it is alleged in denying the Injured Worker's request for temporary total disability compensation the Staff Hearing Officer erroneously applied a standard of 'new and changed circumstances,' which is not applicable on the issue because there has not been a prior finding of maximum medical improvement in the claim." (Stip. at 4.) The commission ordered the claimant's request for reconsideration be set for a hearing.

{¶ 25} 20. In an order mailed on October 15, 2022, the commission decided that the claimant met her burden of demonstrating the June 16, 2022 SHO order denying TTD

---

[1] The brief as also described by the claimant as "a brief in support of injured worker's request for a third level hearing." (Stip. at 21.)

compensation contained "a clear mistake of law of such character that remedial action would clearly follow." (Stip. at 1.) The commission specifically found that the SHO "erred in denying the Injured Worker's request for temporary total disability compensation because the Staff Hearing Officer erroneously applied a standard of 'new and changed circumstances.' " (Stip. at 1.) In order to correct the error, the commission exercised continuing jurisdiction pursuant to R.C. 4123.52, granted the claimant's request for reconsideration, and vacated the June 16, 2022 SHO order denying TTD compensation. Furthermore, the commission granted the claimant's appeal to the extent provided in the order.

{¶ 26} Noting that the claimant was seeking TTD compensation beginning March 17, 2021 and to continue upon submission of appropriate proof, the commission found the claimant "met her burden of proving by a preponderance of the evidence she was temporarily and totally disabled as a result of the allowed conditions in the claim from [March 17, 2021] through and including [June 6, 2022]." (Stip. at 2.) The commission relied on the MEDCO-14 forms submitted by Dr. DeMicco in support of the order. The commission made the following findings:

> The Commission finds the office notes of Dr. DeMicco document the Injured Worker had been experiencing worsening symptoms in her low back in early 2021 and was referred for an EMG/NCV by Dr. DeMicco which was approved by a District Hearing Officer in an order issued [January 20, 2021]. The EMG/NCV was performed on [March 10, 2021 and demonstrated the Injured Worker was suffering from bilateral L5 radiculopathy. Dr. DeMicco totally removed the Injured Worker from the workforce on [March 17, 2021]. Subsequently, the claim was additionally allowed for substantial aggravation of pre-existing spondylolisthesis L5-S1 and L5-S1 radiculopathy by a Staff Hearing Officer in an order issued [July 3, 2021].

(Stip. at 2.) The commission found "the Injured Worker reached maximum medical improvement for all of the allowed conditions in this claim as of [June 6, 2022] based on the report of Howard Pinsky, D.O." (Stip. at 2.) In conclusion, the commission found that "the foregoing circumstances and the medical evidence contained within the file support the Injured Worker was temporarily and totally disabled for the period referenced in this order." (Stip. at 2.)

{¶ 27} 21. Relator commenced this mandamus action by filing its complaint on January 11, 2023.

## II. Discussion and Conclusions of Law

{¶ 28} Relator seeks a writ of mandamus directing the commission to vacate its order granting the claimant TTD compensation.

## A. Requirements for Mandamus

{¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). Where the commission's factual determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

{¶ 30} The commission is "exclusively responsible for assessing the weight and credibility of evidence." *State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). Where the commission's decision is supported by some evidence, the presence of contrary evidence in the record is immaterial. *State ex rel. West. v. Indus. Comm.*, 74 Ohio St.3d 354, 356 (1996), citing *Burley*.

## B. Temporary Total Disability Compensation

{¶ 31} " 'The purpose of TTD compensation is to "compensate an injured employee for the loss of earnings that he [or she] incurs while the injury heals." ' " *Ewell v. Montgomery Cty. Court of Common Pleas*, 10th Dist. No. 13AP-1078, 2014-Ohio-3047, ¶ 13, quoting *Cordial v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 05AP-473, 2006-Ohio-2533, ¶ 8, quoting *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376, 380 (2000). R.C. 4123.56, which governs TTD compensation, sets forth the circumstances under which a claimant is entitled to receive TTD compensation:

> If an employee is unable to work or suffers a wage loss as the
> direct result of an impairment arising from an injury or

> occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F). *See State ex rel. Autozone Stores, Inc. v. Indus. Comm. of Ohio*, 10th Dist. No. 21AP-294, 2023-Ohio-633.

{¶ 32} The statute also contains other restrictions on qualifying for or continuing to receive an award of TTD compensation:

> [P]ayment [for TTD] shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.

R.C. 4123.56(A). "TTD benefits are paid during the healing and treatment period until: (1) the employee returns to work; (2) the employee's treating physician states that the employee is capable of returning to the former position of employment; or (3) the temporary disability becomes permanent." *Ewell* at ¶ 13. Thus, "R.C. 4123.56(A) designates maximum medical improvement as one of four statutory bases for denying temporary total disability compensation." *State ex rel. Barnes v. Indus. Comm.*, 114 Ohio St.3d 444, 2007-Ohio-4557, ¶ 14. MMI is defined as "a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function." Ohio Adm.Code 4121-3-32(A)(1).

## C. Continuing Jurisdiction of the Commission

{¶ 33} The continuing jurisdiction of the commission is governed by R.C. 4123.52. Pursuant to this statute, the commission has continuing jurisdiction over each case and, subject to certain temporal limitations, it "may make such modification or change with

respect to former findings or orders with respect thereto, as, in its opinion is justified." R.C. 4123.52(A). Despite this "broad statutory language," the Supreme Court of Ohio has construed R.C. 4123.52 to limit the commission's continuing jurisdiction, holding that "the prerequisites for its exercise are (1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal." *State ex rel. Knapp v. Indus. Comm.*, 134 Ohio St.3d 134, 2012-Ohio-5379, ¶ 13, citing *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 458-59 (1998), citing *State ex rel. Cuyahoga Hts. Local School Dist. Bd. of Edn. v. Johnston*, 58 Ohio St.2d 132 (1979). *See State ex rel. Griffey v. Indus. Comm.*, 125 Ohio St. 27, 31 (1932) (stating that G.C. 1465-86, which allowed the commission to " 'from time to time make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion may be justified' * * * could not have been intended to take away all finality to the orders and findings of the commission").

## D. Application

{¶ 34} Relator asserts the commission erred by exercising continuing jurisdiction on the basis of a mistake of law in the SHO's order denying TTD compensation. "Continuing jurisdiction is proper when an order contains an obvious mistake of fact or law." *State ex rel. Foster v. Indus. Comm. of Ohio*, 85 Ohio St.3d 320, 322 (1999). Such error of law must be clear, not merely the possibility of an error. *Nicholls* at 459. A commission order seeking to exercise continuing jurisdiction through reconsideration must both identify and explain the basis for the invocation of such jurisdiction. *State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 2004-Ohio-5990, ¶ 15. Thus, "[i]t is not enough to say * * * that there has been a clear error of law," but the order invoking continuing jurisdiction "must also state what that error is." *Id.* (stating that such clear explanation is necessary for the party opposing reconsideration to "prepare a meaningful defense to the assertion that continuing jurisdiction is warranted" and for a court reviewing such order to "determine whether continuing jurisdiction was properly invoked").

{¶ 35} Relator argues the commission did not comply with *Nicholls* because it did not "identify[] language within the order clearly and unambiguously demonstrating" that the SHO "decided the issue of disability on an incorrect standard of law." (Relator's Brief at 31.) In its August 30, 2022 interlocutory order, the commission found that the claimant

"presented evidence of sufficient probative value to warrant adjudication of the Request for Reconsideration regarding the alleged presence of a clear mistake of law of such character that remedial action would clearly follow." (Stip. at 4.) The commission stated that "it is alleged in denying the Injured Worker's request for temporary total disability compensation the Staff Hearing Officer erroneously applied a standard of 'new and changed circumstances,' which is not applicable on the issue because there has not been a prior finding of maximum medical improvement in the claim." (Stip. at 4.) In its September 21, 2022 order, the commission found that the SHO "erred in denying the Injured Worker's request for temporary total disability compensation because the Staff Hearing Officer erroneously applied a standard of 'new and changed circumstances.' " (Stip. at 1.) Thus, the commission complied with the requirements of *Foster*, *Nicholls*, and *Gobich* by specifically setting forth and explaining the clear error of law justifying the exercise of continuing jurisdiction.

{¶ 36} Next, relator contends there is no evidence to support the commission's exercise of continuing jurisdiction. Relator states that the SHO's order "in no way set forth 'new and changed circumstances' as a legal basis for denying benefits" to the claimant. (Relator's Brief at 26.) Relator's contention is not borne out by the text of the SHO's order denying the claimant's request for TTD compensation. In that order, the SHO stated: "Thus, the Hearing Officer finds a lack of any new and changed circumstances to justify temporary total disability compensation two years post injury. Thus, the request for temporary total disability beginning [March 17, 2021], is denied." (Stip. at 31.) In this way, the SHO found that the lack of new and changed circumstances did not justify TTD compensation and, therefore, denied the request for such compensation. Thus, contrary to relator's contention, the plain text of the SHO's order reflects that the lack of new and changed circumstances served as the legal basis for denying the claimant's request for TTD compensation.

{¶ 37} Relator also argues the commission's order granting reconsideration was without a legal basis supporting continuing jurisdiction. Relator contends the commission "cited no law to support its conclusion that 'new and changed circumstances' is NOT an applicable 'standard' in denying temporary total disability compensation." (Emphasis sic.) (Relator's Brief at 28.)

{¶ 38} As detailed above, R.C. 4123.56 sets forth the standard for determining entitlement to TTD compensation and provides the circumstances under which TTD compensation either may not be granted or must be terminated. Nothing in the text of R.C. 4123.56 requires a claimant to demonstrate new and changed circumstances in order to be entitled to TTD compensation. This is notable considering that the General Assembly has employed the phrase "new and changed circumstances" in other contexts within Ohio's Workers' Compensation Act. Under R.C. 4123.57, which governs permanent partial disability ("PPD") compensation, the commission is prohibited from considering a subsequent application for PPD compensation on the same claim "unless supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination." Similarly, R.C. 4123.58, which governs permanent total disability ("PTD") compensation, contains a provision preventing the commission's consideration of a subsequent application for PTD compensation unless the claimant "present[s] evidence of new and changed circumstances."[2] Thus, the General

---

[2] R.C. 4123.58 was amended by 2021 Am.Sub.H.B. No. 75 ("H.B. 75"), which in part added R.C. 4123.58(G) effective September 28, 2021.

Following the amendments to R.C. 4123.58 enacted in H.B. 75, R.C. 4123.58 was amended by the 134th General Assembly a second time in Am.Sub.H.B. No. 281 ("H.B. 281"). H.B. 281, which became effective April 6, 2023, made a minor change to R.C. 4123.58(F) by striking through and thereby deleting the word "handicapped," which immediately preceded "individuals," and inserting the word "with disabilities" after the aforementioned "individuals." However, the remaining text of R.C. 4123.58 in H.B. 281 did not include the text of R.C. 4123.58(G). H.B. 281 gave no specific indication that it intended to amend R.C. 4123.58 by removing R.C. 4123.58(G) through the usual means of striking through the existing text of R.C. 4123.58(G). *See* Ohio Adm.Code 103-5-01 ("Old matter that is to be omitted from an existing codified or uncodified section is indicated by retaining the matter as it appears in the section and striking it through with a horizontal line."). Section 2 of H.B. 281 provided in pertinent part: "That existing sections * * * 4123.58 * * * of the Revised Code are hereby repealed." *See State v. Wilson*, 77 Ohio St.3d 334, 337 (1997) (stating in considering the effect of a former version of R.C. 151.52 that "[m]atter to be affected by an 'existing sections' repeal must appear in the body of the enrolled Act and must be stricken through").

The Legislative Service Commission includes the text of R.C. 4123.58(G) in its official online version of the Revised Code. The following note from the Legislative Service Commission appears after the text of R.C. 4123.58 on its website: "The Legislative Service Commission presents the text of this section as a composite of the section as amended by multiple acts of the General Assembly. This presentation recognizes the principle stated in R.C. 1.52(B) that amendments are to be harmonized if reasonably capable of simultaneous operation." Legislative Service Commission, *Section 4123.58*, https://codes.ohio.gov/ohio-revised-code/section-4123.58 (accessed August 8, 2023).

The provision in R.C. 1.52 noted by the Legislative Service Commission provides:

Assembly has used the phrase "new and changed circumstances" when establishing standards for adjudicating subsequent applications for compensation under Ohio's Workers' Compensation Act. *See generally Wilson v. Durrani*, 164 Ohio St.3d 419, 2020-Ohio-6827, ¶ 30, quoting *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, ¶ 26 (stating that the " 'General Assembly's use of particular language to modify one part of a statute but not another part demonstrates that the General Assembly knows how to make that modification and has chosen not to make that modification in the latter part of the statute' "). No language concerning "new and changed circumstances" appears in the provisions governing TTD compensation in R.C. 4123.56.

{¶ 39} However, courts have found a new and changed circumstances requirement to be applicable in the context of continuing jurisdiction to consider a subsequent application for TTD compensation following a finding of MMI that terminates a prior or initial period of TTD compensation. *State ex rel. Bing v. Indus. Comm. of Ohio*, 61 Ohio St.3d 424 (1991). The Supreme Court of Ohio recognized in *Bing* that "claimants who had previously been declared as MMI could experience temporary exacerbation of their condition that justified further treatment or even temporary total disability compensation, as the claimant struggled to recover his or her previous level of well-being." *State ex rel. Conrad v. Indus. Comm.*, 88 Ohio St.3d 413, 415-16 (2000), citing *Bing*. Based on this recognition, the court in *Bing* found that "even where temporary total disability compensation payments have been previously terminated, R.C. 4123.52 grants the Industrial Commission continuing jurisdiction to award temporary total disability

---

If amendments to the same statute are enacted at the same or different sessions of the legislature, one amendment without reference to another, the amendments are to be harmonized, if possible, so that effect may be given to each. If the amendments are substantively irreconcilable, the latest in date of enactment prevails. The fact that a later amendment restates language deleted by an earlier amendment, or fails to include language inserted by an earlier amendment, does not of itself make the amendments irreconcilable. Amendments are irreconcilable only when changes made by each cannot reasonably be put into simultaneous operation.

R.C. 1.52(B). *See State v. McCullough*, 9th Dist. No. 28917, 2018-Ohio-4499, ¶ 11-12; *Wilson* at 337.

The magistrate infers the absence of R.C. 4123.58(G) from the text of H.B. 281 may have occurred because H.B. 281 was initially passed by the Ohio House of Representatives on June 16, 2021, which was before the effective date of H.B. 75. Regardless, the continued applicability of R.C. 4123.58(G) is not at issue in this matter. Rather, reference to R.C. 4123.58(G) as amended by H.B. 75 in this decision is merely to illustrate the General Assembly's previous use of the phrase "new and changed circumstances" in the context of Ohio's workers' compensation law.

compensation where the claimant has again become temporarily totally disabled." *Bing* at 426. Thus, "[t]he commission's continuing jurisdiction * * * allows for reinstatement of temporary total disability compensation after an MMI determination if new and changed circumstances warrant." *State ex rel. Moore v. Internatl. Truck & Engine*, 116 Ohio St.3d 272, 2007-Ohio-6055, ¶ 35. *See Barnes* at ¶ 15 (stating that "a temporary worsening, or flare-up, of a claimant's condition can warrant renewed temporary total disability compensation as the claimant struggles to return to the former baseline").

{¶ 40} Here, however, the claimant had not been found to be at MMI prior to her request for TTD compensation, which was her first and only request for TTD compensation in the claim. Nothing in *Bing* or subsequent cases suggests that a finding of new and changed circumstances is required to establish entitlement to TTD compensation prior to a finding of MMI that terminates a prior or initial period of TTD compensation. The continuing jurisdiction of the commission to reinstate TTD compensation after a finding of MMI based on new and changed circumstances was not at issue when the SHO issued the order denying TTD compensation based on the "lack of any new and changed circumstances to justify temporary total disability compensation." (Stip. at 31.)

{¶ 41} Neither the statutory provisions governing entitlement to TTD compensation nor the cases interpreting such law require a claimant making an initial request for TTD compensation to demonstrate new and changed circumstances. Nor does relator demonstrate otherwise by pointing to any case in which a claimant making an initial request for TTD compensation is required to demonstrate new and changed circumstances. Because nothing in the applicable statutes, administrative code provisions, or caselaw requires a claimant to demonstrate new and changed circumstances in order to establish entitlement to an initial period of TTD compensation prior to a finding of MMI or permits the denial of such a request for TTD compensation where the claimant does not demonstrate new and changed circumstances, it was a clear error of law for the SHO to deny TTD compensation on the basis of a lack of new and changed circumstances. Thus, contrary to relator's contentions, the commission's order granting reconsideration did not lack any legal basis supporting continuing jurisdiction.

**E. Conclusion**

{¶ 42} Based on the foregoing, relator has not demonstrated a clear legal right to the requested relief or that the commission is under a clear legal duty to provide such relief. Accordingly, it is the decision and recommendation of the magistrate that relator's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.